## SMITH *v.* MOSIER.

A copy of the record of a patent for *United States'* land from the general land office, under the signature of the commissioner, and the seal of the office, is admissible in evidence, if the original patent be lost or destroyed.

Sworn copies of affidavits on file in the office of the register of a land office, respecting a pre-emption right, are admissible as evidence in cases in which the originals, could they be procured, would be evidence.

The admission of illegal evidence, if it could have no bearing on the merits of the cause, does not render the proceedings erroneous.

A land office certificate, under the statute of 1833, is evidence of legal title only in the hands of a *bona fide* holder.

Lands of the *United States* which, prior to the 29th of *May*, 1830, had been proclaimed for sale by the president but which remained unsold, were subject to the pre-emption right conferred by the act of that date.

ERROR to the *Morgan* Circuit Court.

DEWEY, J.—This was an action of disseisin by *Mosier* against *Smith* for a certain quarter section of land in the *Crawfordsville* district. Plea, the general issue. Trial by the Court by consent of parties, and judgment for the plaintiff.

It appears by bills of exception, that *Mosier* was settled upon, and cultivated a part of the premises described in the declaration, in 1829, and that he was in possession of the same on the 29th of *May*, 1830 ; on the 13th of *October*, 1830, *Smith* procured from the proper land office the receiver's

receipt for final payment for the same tract of land; on the 30th of *November*, 1830, *Mosier*, by his own affidavit and that of another person, made proof of the right of pre-emption to it, before the receiver and register of the *Crawfordsville* land district, which affidavits are on file in the office of the latter, agreeably to the instructions of the commissioner of the general land office; on the 31st of *April*, 1831, he (*Mosier*) procured from the receiver a duplicate certificate of final payment; on the 5th of *April*, 1833, a patent from the *United States* to *Mosier* issued, containing an absolute grant to him of the land in dispute. On the 5th of *July*, 1833, the commissioner of the general land office, by letter, directed the receiver at *Crawfordsville* to refund the money paid by *Smith*, as his entry conflicted with *Mosier's* right of pre-emption; on the 23d of *June*, 1836, a law of congress for the relief of *Smith* was passed, enacting that the commissioner of the general land office be directed to issue a patent to him for the same quarter section of land, providing, however, that that act should not be construed to affect the right of any ·third party; a patent, reciting the act of congress, issued to *Smith* on the 6th of *June*, 1837, containing a quit-claim from the *United States* to the same land, and a provision that it should be " subject to all the rights both legal and equitable of any and every person holding claim or title in any manner thereto," it being the express intent of that patent that it should not affect any such right or claim in any manner or form whatsoever; on the 25th of *December*, 1830, *Mosier* still being in possession of the land cultivated by him the year before, *Smith* entered upon a part of the same quarter section, and held it at the time of the commencement of the suit.

*Smith* objected to all the testimony offered by *Mosier*, but his objections were overruled.

Several questions arose as to the admissibility of the testimony.

1. *Mosier*, for the purpose of establishing his patent, having first proved, by his own affidavit and other testimony, the loss of the original, offered in evidence a copy of the record of the same in the general land office, certified under the signature of the commissioner and the seal of his office.

By the act of congress of the 25th of *April,* 1812, sec.
8, patents for land are required to be recorded in that office ;
and, by the 4th sec. of the same act, it is provided that
copies of any records, &c. belonging to the office, authenti-
cated by the signature of the commissioner and the seal of
his office, shall be competent evidence in all cases in which
the originals would be evidence.  A copy of the record of
a patent for land from the general land office under the
signature of the commissioner, and the seal of his office, is
competent testimony when the original patent is lost or de-
stroyed.   This point was virtually decided in the case of
*Harris* v. *Doe, d. Barnett et al.*  4 Blackf. 369.

2. In order to prove the affidavits of himself and another
person on file in the register's office at *Crawfordsville,* re-
specting his pre-emption right, *Mosier* produced sworn copies
of them which were suffered to go to the jury.

The act of congress of the 29th of *May,* 1830, respect-
ing pre-emption rights of settlers on the public land, which
expired one year after its passage, required the person who
claimed the right, to prove the prerequisites on which it de-
pended to the satisfaction of the receiver and register of
the proper land district, agreeably to rules to be prescribed
by the commissioner of the general land office for that
purpose.   The record informs us that the commissioner's
instructions to those officers were, to take the " affidavit
of the occupant supported by such corroborative testimony"
as might be entirely satisfactory to them, and that the testi-
mony so taken should be filed in the office of the register.

As these affidavits were not removable from the office
where they were required to be kept, we see no reason
why sworn copies should not be received in testimony in
any case in which the originals would be evidence, could
they be produced.   They certainly would not be competent
to establish the right of *Mosier* to the pre-emption of the
premises in question, because one of the affidavits came
from himself, and because both were *ex parte;* but we know
of no objection to their being received in testimony for the
purpose of showing that *Mosier made claim* to that right in
proper season, according to the requisition of the statute.
We do not mean to say, however, that any such proof on
the part of *Mosier* was necessary ; on the contrary, as the

success of *Mosier* in establishing a legal title must depend upon his patent, even if the testimony in question had been inadmissible, it is so entirely immaterial to the merits of the cause, that it could have no influence on the result; and its reception does not constitute error.

The same remarks are applicable to the certificate of final payment produced by *Mosier.*

3. A sworn copy of a letter from the commissioner of the general land office was admitted in evidence. This was clearly erroneous ; but as it should and could have no bearing upon the merits of the cause, the error ought not to set aside the finding and judgment of the Court.

The plaintiff in error does not now urge any objection to the admission of the parol testimony establishing the cultivation of the disputed premises in 1829 by *Mosier,* his possession on the 29th of *May,* 1830, and the possession of *Smith* at the time of the commencement of the suit, which was undoubtedly all legal testimony.

The question whether the Court below gave a correct judgment upon the valid and pertinent testimony before them yet remains to be considered.

The legal title must prevail in this cause ; and each party claims that to be in himself—*Mosier* by his patent dated in 1833, and *Smith* by his certificate of final payment dated in 1830. It is evident that the special act of congress, and the conditional and qualified patent to *Smith,* cannot affect any right which *Mosier* may have acquired by his patent. To determine the extent of that right, it will not be necessary for us, on this occasion, to inquire whether irregularity in issuing, or fraud in procuring a patent for land from the *United States,* is examinable in a Court of law. As the case presents itself to us the patent must prevail, unless an elder legal title was invested in *Smith* by his land office certificate of final payment.

The efficacy of the certificate for this purpose depends upon a law of this state passed *February* the 4th, 1833. Laws of 1833, p. 112. This statute enacts, " that any and every land office certificate of purchase, and any and every land office certificate of final payment, of any lands sold at such land office, shall, before the issuing a patent thereon, be evidence that the legal title in and to the lands men-

tioned in the same is in the legal and *bona fide* holder thereof." The design of this law is obvious. Its object is to enable a person who has purchased a tract of land of the *United States*, and paid for it, to maintain a suit at law for the land before a patent can be obtained. The moment the patent is procured, the law loses its force by its own terms, and the certificate resumes its original character. This Court has heretofore determined (before the passage of the statute) that a land office certificate conveyed no legal title. *Mosier* v. *Smith*, 3 Blackf. 132. *Smith* has procured a patent for the same land described in the certificate, and cannot, therefore, rely upon the latter as evidence of legal title. But had no patent issued upon this certificate, and it could yet be viewed as such evidence, it would be only *prima facie*, and might be impeached; and in this respect, perhaps, it may be distinguishable from a patent. By the statute, it is made evidence of legal title only in the hands of a *bona fide* holder; whether the holder, therefore, be of that character is an open question by the terms of the act itself.

We will, then, proceed to examine what are the rights of *Smith* under this certificate, in the same manner as if no patent had ever issued to him.

He claims the litigated property by virtue of a private purchase of the *United States* by ordinary entry. *Mosier* demands it under a pre-emption right, which he alleges existed in him at the time of *Smith's* entry, and which he afterwards perfected by his patent. The land in controversy lies in a district which had been proclaimed for sale by the president of the *United States* prior to the passage of the law of congress of the 29th of *May*, 1830; and therefore, as *Smith* contends, is not within its operation. The first section of that law provides, that every settler or occupant of the public land prior to its passage, who was then in possession, and had cultivated any part thereof in the year 1829, should be entitled to a pre-emption right to be enforced in the manner pointed out by other parts of the law. This section is plain and embraces all the public lands, with the exception of certain reservations to the *United States* and the states; but there are other passages in the act which have created great doubts whether the privileges

conferred by it were extended to lands which had been proclaimed for sale by the president before its passage. If it does not include such lands, *Smith's* claim must prevail in a Court competent to inquire into the validity of *Mosier's* patent.

Soon after its passage, it received a construction from the secretary of the treasury of the *United States*, which was transmitted through the officers of the general land office to the receivers and registers of the several land districts, and by them acted upon. This construction was, that preemption rights extended as well to lands which had been proclaimed for sale previous to the 29th of *May* 1830, but which remained unsold, as to those which had not been so proclaimed. This interpretation by a high federal officer whose duty it was to execute the law, is certainly entitled to great respect ; but had we no light on this subject but what is derived from that source, respectable as it is, we should hesitate before we adopted the same opinion. We have, however, other guides to a correct conclusion. The framers of the law, themselves, have impliedly declared their intention in passing it, and have thereby sanctioned the construction of the secretary. Since the passage of the statute, with full knowledge of the sense given it by that officer, congress has repeatedly revived it without any explanation or alteration of its terms. This we cannot suppose they would have done, had their meaning been mistaken by the functionary on whom the execution of that, and the reviving laws, devolved.

Lands, then, which had been proclaimed for sale by the president of the *United States* on the 29th of *May*, 1830, but which remained unsold, were subject to the pre-emption right conferred by the act of that date.

The parol testimony in the case proves, that, in 1829, *Mosier* cultivated a part of the quarter section in dispute, that he was living on it on the 29th of *May*, 1830, and even at the time of *Smith's* entry. *Mosier's* right of pre-emption, therefore, existed at the latter period ; of this right *Smith* was bound to take notice ; he entered the land subject to it, and being so bound, and having so entered the land, he cannot be said to be the legal or *bona fide* holder of the cer-

tificate of final payment, or to derive from it any title, legal or equitable.

*Per Curiam.*—The judgment is affirmed with costs.

*C. Fletcher, O. Butler,* and *J. Morrison,* for the plaintiff.

*P. Sweetser,* for the defendant.