James Gray, Plaintiff in Error, v. James A. McCance, Defendant in Error.

ERROR TO WARREN.

The establishing of a preëmption right, to the satisfaction of a register and receiver, and the entry of the land, does not preclude those officers from again inquiring into the merits of the claim.

After a preëmption right has once been proven, and another party claims a pre-

Gray *v.* McCance.

emption to the same land, it is the duty of the register and receiver to open the case, and determine to which of the claimants the right belongs.

A party who has a valid right of preëmption is not divested of that right because another, upon an *ex parte* application, has been allowed to enter the land; the land officers may cancel the entry first made.

And if upon such examination into the right of contestants for a preëmption, it shall appear that neither are entitled to the privilege, the land officers may reject both; and their decision is final in the premises.

This cause was heard before Kellogg, Judge, at September term, 1852, of the Warren Circuit Court.

J. Manning and J. C. Hall, for plaintiffs in error.

Williams & Lawrence, for defendants in error.

Treat, C. J. The leading facts of this case are as follows. In September, 1841, James Gray appeared at the land-office at Quincy, and proved to the satisfaction of the register and receiver, that he was entitled to a preëmption to the south-west quarter of section eleven, township seven, north of range eight west, under the provisions of the act of Congress of the 1st of June, 1840; and paid the purchase-money, and obtained the receiver's receipt for the same. In November, 1841, S. S. White, as administrator of Edward White, and on behalf of his heirs, applied to enter the same tract of land, by virtue of a preëmption under the act of Congress of the 22d of June, 1838. The register and receiver refused to entertain the application, but referred the matter to the commissioner of the general land-office. In December, 1841, the commissioner suspended the entry of Gray; and directed the register and receiver to ascertain the facts of the case, and report the same to him, with their opinion thereon. In May, 1842, they reported the evidence to the commissioner, with their opinion that neither Gray nor White was entitled to a preëmption. The parties had notice of the investigation, and submitted evidence in support of their respective claims. In June, 1842, the commissioner instructed the register and receiver to cancel the entry of Gray, and refund him the purchase-money. In March, 1844, James A. McCance applied to enter the same tract of land, by virtue of a preëmption under the act of Congress of the 4th of September, 1841; and upon proof of his right, to the satisfaction of the register and receiver, and the payment of the purchase-money, he received the certificate of purchase. This claim was contested by Gray, on the ground that the settlement of McCance was illegal and defective; and a large mass of evidence was intro-

duced by the parties. The evidence was reported to the commissioner of the general land-office; to whom, and the secretary of the treasury, an appeal was taken by Gray. In September, 1844, the entry of McCance was confirmed by the commissioner and the secretary of the treasury. In October, 1848, Gray filed a bill in chancery against McCance, to compel a conveyance of the legal title. The cause proceeded to a hearing on the pleadings and proofs, and resulted in a decree dismissing the bill. Gray sued out a writ of error.

It is insisted, on the part of the complainant, that the proof of his preëmption right to the satisfaction of the register and receiver, and the payment of the purchase-money, secured him the title to the land; and that neither those officers, nor the commissioner of the general land-office, had any authority to vacate the entry and sell the land to another person. And the cases of Carroll *v.* Safford, 3 How. 441; Rogers *v.* Brent, 5 Gil. 573; Moyer *v.* McCullough, 1 Car. 339, and Groom *v.* Hill, 9 Missouri, 323, are cited in support of the position. But those decisions were all made in reference to ordinary entries of lands, to which no rights of preëmption attached. It may well be, where a tract of land is subject to private entry, and to which there is no right of preëmption, that a party who pays the purchase-money, and receives a certificate of purchase, acquires a vested right to the land; and that the land-officers have no power to vacate the entry, or do any other act, the effect of which may be to deprive him of that right. In such a case, it is their duty to sell the land to the party who first offers to pay the government price; and when that duty is performed, their power is exhausted. The land becomes the property of the purchaser, and may be aliened and disposed of as such. Until the emanation of the patent, the United States hold the naked legal title in trust for the purchaser, and those claiming under him. Nor are the cases of Isaacs *v.* Steel, 3 Scam. 97; Burnes *v.* Manlove, Ib. 339; and Smith *v.* Mosier, 5 Blackf. 51, applicable to the present case. It was decided, in the two former cases, that the preëmption laws extended to lands that had been offered at public sale, and that a purchase of a tract of land by private entry was made subject to a right of preëmption thereto; and a court of equity would perpetually enjoin the purchaser from asserting title as against the preëmptor, who had subsequently entered the land under his preëmption right. In the latter case, a preëmptor, who made the junior entry and obtained a patent, was permitted to maintain ejectment against the party who made the prior purchase by private entry.

But this case stands upon different footing, and is governed

by different principles. The land in question had never been proclaimed for sale by the president. It was not subject to private entry. It could only be acquired by virtue of a preëmption right. The complainant, indeed, established such a right to the satisfaction of the register and receiver, and was permitted to make the entry. But that did not give him a vested right to the land, nor preclude those officers from again inquiring into the merits of his claim. Another party claimed a right of preëmption, and they proceeded to investigate the claims of both parties. Upon this inquiry, they came to the conclusion, that neither party was entitled to a preëmption, and their decision was confirmed by the commissioner of the general land-office. The complainant's entry was then vacated, and the purchase-money offered to be restored. It was clearly the duty of the register and receiver to open the case, and determine which of the claimants was entitled to a preëmption. Such is the uniform practice under the preëmption laws. Where a contest arises, but one of the claimants can have the right to enter the land; and it is the duty of the register and receiver to ascertain facts of the case, and decide to whom the right belongs. A party who has a valid right of preëmption is not divested of that right merely because another, upon an *ex parte* application, has been allowed to enter the land. He may still insist upon his right, and the land officers have the authority to sustain it, and cancel the entry previously made. It did not follow because White failed to establish his claim, that the prior entry of the complainant should stand. The same investigation showed that his claim was equally groundless, and that he had no right to the land under the preëmption laws. The claims of both parties were properly before the register and receiver for examination and adjudication. They had jurisdiction of the whole case, and the power to determine it fully and effectually. Having rejected both claims, with the concurrence of the commissioner of the general land-office, their decision was final and conclusive upon the parties. No other tribunal has the power to revise and reverse it. It is the exclusive province of the register and receiver, to hear and determine all controversies respecting preëmption claims. The act of the 29th of May, 1830, required proof of the right of preëmption to be "made to the satisfaction of the register and receiver of the land district in which such lands may lie, agreeably to the rules to be prescribed by the commissioner of the general land-office for that purpose." The subsequent acts all contain the same provision in terms, or adopt it by reference to the former act. The uniform construction put upon these laws is, that the decision of the register and

receiver is final and conclusive, unless set aside by the commissioner of the general land-office, or the secretary of the treasury. This has been the opinion of the law-officers of the United States. The attorney-general, in an opinion bearing date the 28th of August, 1818, decided that, by the preëmption act of the 5th of February, 1813, the power of ascertaining and deciding on the facts which entitled a party to a right of preëmption was exclusively vested in the register and receiver, without any power of revision elsewhere; and the same officer, on the 26th of April, 1836, gave a similar opinion in reference to the preëmption laws of the 29th of May, 1830, and the 19th of June, 1834. He, however, held that the register and receiver were bound to conform to the regulations prescribed by the commissioner of the general land-office; and that the latter might properly suspend an entry, and withhold the patent, where the decision was obtained by fraud, or founded in material error of fact or law. And such is the established doctrine of the courts. In the case of Dickinson v. Brown, 9 Smedes and Marsh. 130, Dickinson proved a right of preëmption under the act of Congress of the 19th of June, 1833, and entered the land in question. Brown, claiming a right of preëmption to the same tract, afterwards objected to the legality of the entry; and the commissioner of the general land-office directed the register and receiver to take testimony in regard to Dickinson's right. Upon such investigation, the register and receiver decided against the claim of Dickinson; and the commissioner approved their decision, cancelled the certificate of entry, and ordered the purchase-money to be returned. Brown was then permitted to enter the land. He brought ejectment against Dickinson, and recovered. The court said of the case : " It was in proof that the certificate of entry had been cancelled, and we cannot say, that the register and receiver, with the approbation of the commissioner of the general land-office, had no power to cancel it; on the contrary, it is believed that such power is uniformly exercised. To a certain extent, these officers have a discretion in such matters. They are empowered to hear and decide on an application for a preëmption right. As against the government, the certificate was but an incipient and inchoate title ; the officers discovered that it had been improvidently issued, and cancelled it, and issued a complete legal title to another, and refunded, or offered to refund, the money paid ; and it was competent for the plaintiff to prove this statement of facts." In Mitchell v. Cobb, 13 Alabama, 137, where the register and receiver determined a controversy between two individuals, each claiming a right of preëmption under the act of Congress of the 4th of September,

1841, and, on appeal, the secretary of the treasury affirmed the decision, it was held that the same was final and conclusive on the parties. In Lewis *v.* Lewis, 9 Missouri, 183, it was held, that under the acts of Congress of the 22d of June, 1838, and the 1st of June, 1840, the decision of the register and receiver was conclusive, until reversed by the commissioner of the general land-office. The cases of Bennett *v.* Farrar, 2 Gil. 598; and Cunningham *v.* Ashley, 7 Eng. 296, assert the same doctrine.

The determination of the register and receiver, with the sanction of the commissioner, was final and conclusive of the right claimed by the complainant. The subsequent decision in favor of the defendant, with the approbation of the secretary of the treasury, was alike binding and conclusive upon the parties. The act of the 4th of September, 1841, under which the last entry was made, is even more explicit in this respect than the former laws. It provides, that " all questions as to the right of preëmption arising between different settlers, shall be settled by the register and receiver of the district within which the land is situated, subject to an appeal to, and revision by, the secretary of the treasury." It will not be necessary to refer to the mass of evidence in the record in relation to these preëmption claims. It has been submitted to the appropriate tribunal, and a full decision had of all the matters in controversy. This court has no authority to review that decision. It would be an useless ceremony for the court to intimate an opinion upon a question which it has no power to decide.

The decree must be affirmed.

*Decree affirmed.*