Hatton, Ex'r, v. Jones.

No. 8701.

HATTON, Ex'r, v. JONES.

PRACTICE.—*Supreme Court.*—*Assignment of Errors.*—*New Trial.*—*Suppressing Deposition.*—Error in suppressing a deposition is a reason for a new trial, but not a proper specification in an assignment of errors.

SAME.—*Specification of Error.*—A specification : " The court erred in rendering the judgment in said cause," is too general to present any question for consideration.

SAME.—*Instructions.*—A party desiring further instructions upon a question of law must ask for them.

PROMISSORY NOTE.—*Delivery.*—*Gift.*—*Evidence.*—On trial of an action upon a promissory note, evidence that it was executed to the plaintiff as payee, at the request of her father, a creditor of the maker, and held by him, and that the plaintiff took it from the depository of his private papers in his absence, and without his knowledge or consent, and refused upon request to return it to him, but commenced suit against the maker, sustains a finding that the note was not so delivered as to vest the property therein in her and constitute of it an executed gift.

SAME.—*Trustee.*—*Constructive Delivery.*—In such case the father could not appoint himself trustee for his daughter and make a valid delivery of his own property to himself as such trustee; nor would his intention or promise to give the note to her constitute him a trustee for her.

SAME.—*Deposition.*—In such case the suppression of questions and answers in a deposition of the plaintiff relative to credits on the note, not for payments of the maker, not authorized by her father, and not tending to show a delivery of the note, was not error.

SAME.—*Hearsay.*—*Directions as to Possession.*—In such case, the father not being a party to the action, the daughter's conversations with him, unless a part of the transaction, were inadmissible; but he was properly permitted to testify what directions or assent he gave to her, or any other person, to take possession of the note.

WITNESS.—*Impeachment.*—Questions evidently asked for the purpose of impeachment only, but fixing neither time nor place, are improper.

SAME.—*Evidence.*—*Deposition of Deceased Party.*—*Testimony of Surviving Party.*—Where the deposition of a deceased party, represented by her executor, has been read in evidence, the other party may testify on all material points and matters of fact embraced in the deposition.

NEW TRIAL.—*Affidavit.*—*Newly-Discovered Evidence.*—An affidavit for a new trial on the ground of newly-discovered evidence, not stating the facts expected to be proved, and that the affiant believed such facts to be true, is insufficient.

From the Wayne Circuit Court.

*H. C. Fox, W. D. Foulke* and *J. L. Rupe,* for appellant.
*T. J. Study,* for appellee.

FRANKLIN, C.—This action was originally brought in the name of Eliza H. Hatton as plaintiff. After the action was commenced, she died testate; her death was suggested of record, and the name of the executor of her will, Lemuel C. Hatton, was substituted as the plaintiff in the case.

The action was brought upon a promissory note alleged to have been executed by the appellee, John K. Jones, to said Eliza H. Hatton, for $1,000, dated May 1st, 1876, and due two years after the date thereof. To the complaint, the appellee filed an answer in seven paragraphs. The fifth, on motion, was stricken out; the first was a denial; second, payment; third, fourth and sixth, *non est factum* sworn to; seventh, want of consideration. Reply by a general denial. Trial by jury. Verdict for appellee. Motion for a new trial overruled, and an exception reserved. Judgment upon the verdict for appellee.

The following errors have been assigned in this court:

"1st. The court erred in sustaining the defendant's motion to suppress the deposition of Eliza H. Hatton.

"2d. The court erred in overruling the plaintiff's motion for a new trial, and in refusing to grant a new trial.

"3d. The court erred in rendering the judgment in said cause."

The ruling, upon a motion to suppress depositions, may be properly alleged as a reason for a new trial, but can not be stated as a proper specification in the assignment of errors. *The Jeffersonville, etc., R. R. Co.* v. *Riley,* 39 Ind. 568; *Mercer* v. *Patterson,* 41 Ind. 440; *Patterson* v. *Lord,* 47 Ind. 203.

The third specification in the assignment of errors is too general to present any question for consideration.

This leaves, as the only question to be considered, the overruling of the motion for a new trial.

The facts in the case as gathered from the record are substantially as follows:

William C. Jones is the father of the appellee, Lee Jones, Rebecca Masters and the said Eliza H. Hatton; that before the date of said note, the appellee and his said brother Lee were each indebted to their father in a considerable sum for land sold to them by their father, and for which indebtedness the latter held the notes of his said sons; that said father contemplated assisting his said children or equalizing a portion of his property amongst them, and for this purpose, and at his request, his son Lee signed a note, payable to Mrs. Hatton, for $1,000, and the appellee, John K. Jones, signed a note payable to Mrs. Masters for a like amount, for which they were to have credits on their said respective notes held by their father, which notes were delivered to the father, who held them, without ever delivering them to his daughters, for the purpose, as the testimony tends strongly to show, though there is some conflict upon that question, of investing the amount in real estate for the use and benefit of his said daughters and their children, without letting his sons-in-law have the control of the money; that he afterward informed the daughters of what he had done; that, shortly after this arrangement, Mrs. Masters purchased some real estate, and desired her portion of the money to pay for it. Appellee, John K., was not then in a condition to conveniently pay it. But Lee could pay off his note, which was payable to Mrs. Hatton. The father suggested that Lee pay off his note, and that the money go to Mrs. Masters, and that John give a new note to Mrs. Hatton in the place of the one that he had given to Mrs. Masters. Lee paid the money, the father sent it to Mrs. Masters, and John K. signed the new note to Mrs. Hatton, payable two years after date. The father surrendered the note payable to Mrs. Masters, and took possession of the note payable to Mrs. Hatton. After the new note was due, some time in June, 1878, Mrs. Hatton, while living in a part of the house with her father, in the absence of her father and mother, went into the apartment of the house occupied by them, and from a jar in his cupboard, in which he kept his

papers, without his knowledge or consent took said note, and has since retained the possession thereof until it was placed in the hands of an attorney for collection. That shortly after missing the note, on being approached upon the subject by the father, she acknowledged the taking of the note, and on being requested by the father and mother to return the note, she refused to do so, and caused this suit to be commenced on the same.

The controversy between the parties is as to whether the note was so delivered as to vest the property therein in Mrs. Hatton.

The first reason in the motion for a new trial is the suppressing of the seventeenth, eighteenth, nineteenth, twentieth, twenty-third and twenty-eighth questions and answers in the deposition of Mrs. Hatton.

These questions and answers had reference to certain payments claimed by appellant to have been made upon the note; $20 at one time given to Eliza by her mother, and which her mother told her could be credited upon the interest of the note; $25 paid by her father to Dr. Butler, on her doctor's bill, which her father said could be credited on the note, and a store bill which her father paid at one time, amount not given. The father had not placed any of these credits on the note, and testified that he did not direct Mrs. Hatton to place any of them on it. These questions and answers are insisted upon as being admissible because they tended to prove that the father recognized Mrs. Hatton as owning the note, and her right to control the proceeds. We do not think that they tended to prove that the note had been delivered to Mrs. Hatton, or that the father had surrendered his right to the possession of the note, or the control of the payment, and to manage the appropriation of the proceeds of its payment. There was no pretence that appellee made any payments on the note to Mrs. Hatton. The suppression of these questions and answers, if an error, was a harmless one, but we do not think it was error.

The motion to suppress as to the sixth and twenty-second questions and answers was not ruled upon at the time of the motion, but reserved to be ruled on at the trial. And the second reason for a new trial was the refusal of the court to allow the plaintiff to read in evidence to the jury these two questions and answers.

The sixth question was this: Upon being shown a copy of the note, she was asked to state all she knew about its execution. Her answer was, detailing a conversation with her father after the execution of the first note and before the execution of the second and the one in suit. This answer was hearsay evidence, and not responsive to the question.

The twenty-second question was in relation to what other payments were made, if any. Her answer was, giving a conversation with the father about the same dry-goods bill as in the questions and answers suppressed, and in relation to crediting the amount on the note. The father was not a party to the suit, and conversations with him, unless they were at the time and as a part of the transaction, were not admissible as evidence, unless for the purpose of impeachment, upon the proper foundation being laid; nothing of which was attempted to be done in this case.

The third reason stated in the motion for a new trial was alleged error in the court in permitting the defendant by his counsel to ask William C. Jones, while on the witness stand, as to what directions, counsel or assent he gave Eliza Hatton, or any other person, to take the note out of his possession, and, over the objections of the plaintiff, the witness to answer the question.

We see no reasonable objection to this question and answer.

The fourth reason was for refusing to permit the plaintiff to ask the same witness, whether he had made certain specified statements to Mrs. Hatton in relation to the signing of the note and leaving it with him. Such questions could only be asked for the purpose of impeachment, and as no time or place was fixed, the court did not err in ruling them out.

The fifth reason is waived by not being noticed in the brief of appellant.

The sixth reason is error of the court in permitting the appellee, while on the witness stand, to testify to a conversation between himself, his father and Mrs. Hatton, had at his father's house in August, 1879.

The deposition of the deceased Mrs. Hatton was read in evidence, and we think that made the testimony of appellee admissible. The appellee's testimony was only upon material points and matters of fact embraced in the deposition. 2 R. S. 1876, p. 134.

The seventh reason was for newly discovered evidence. The appellant, in his affidavit, stated that if a new trial should be granted to him, he could prove by the witnesses whose affidavits were filed therewith the facts therein stated, without stating any of said facts in his affidavit, or that he believes them to be true. He also states facts which he alleges he was informed that he could prove by a witness in the State of Illinois, but whose affidavit as to the same had not been procured, and he believed such facts to be true. These facts were all, except the payment of $25 to Dr. Butler by the father, for Mrs. Hatton, on her doctor's bill, hearsay testimony—the mere declarations of the father, not made in connection with any part of the transactions spoken of, and in the absence of appellee. And we think the affidavit is insufficient in form and substance for not stating the facts which he expected to prove by the witnesses whose affidavits accompanied his, and for not stating that he believed such facts to be true. *Shirel* v. *Baxter*, 71 Ind. 352.

The eighth reason was for alleged error in instructions to the jury, numbered from one to thirteen inclusive.

The appellant, in his brief, only complains of instructions numbered seven and twelve; and the objections to these instructions are, that, while they may state the law correctly as to an actual delivery, they do not go far enough and state the law as to a constructive delivery; this, they say, ought to have

been done, and the court ought to have instructed the jury upon the difference between an actual and a constructive delivery. If appellant desired further instructions, he ought to have asked for them. It was not error in the court to fail to give such instructions when they were not asked for. This question has been so repeatedly decided by this court, that it is unnecessary to cite authorities.

The ninth and tenth reasons were, that the verdict was not sustained by the evidence, and was contrary to law.

The jury, in addition to their general verdict for appellee, returned the following interrogatories and answers thereto; but the record does not show which, if either, of said parties requested said interrogatories to be answered:

"1st. Did William C. Jones ever deliver the note sued on to Eliza H. Hatton? Answer. No.

"2d. Did the defendant, John K. Jones, ever deliver the note sued on to Eliza H. Hatton? Answer. No."

It is insisted by appellant's counsel, that, under the facts as proven in this case, there was a constructive delivery of the note to Eliza H. Hatton, and that the father constituted himself a trustee to hold said note for the use and benefit of said Eliza. We have been referred by counsel to a number of cases on this question. But they refer to a class of cases where the property had passed into the hands of another person than the donor.

We do not think that a person could appoint himself as trustee and then make a valid delivery of his own property to himself as such trustee; or that an intention or promise to give would make a perfected gift so as to constitute the intender or promisor a trustee for the use of the intended or promised beneficiary.

The case of *Fanning* v. *Russell*, 94 Ill. 386, is very similar to the one under consideration. There the father deeded lands to his two sons, and took six promissory notes for $1,500 each for the unpaid purchase-money; each one of the notes was made payable to one of his six daughters. The

notes were delivered to the father, but were never delivered to the sisters. The court say: "No doubt it was the intention of the father that his daughters should each have the benefit of one of the notes, that is, the principal, the interest being made payable to him, but so long as he retained the possession of such notes, they were his own property, notwithstanding they were made payable to his daughters. Until the notes were delivered it was his privilege to change his purpose and withhold the gifts he may have intended to make. The daughters had no vested interest in the gifts their father may have proposed to make to them, and of course could not compel a specific performance. It does not appear the notes were ever delivered to the beneficiaries named, by the father holding them." The difference between the facts of the two cases is, that in that case the interest was made payable to the father; in this case, the father demanded a return of the note after it had been taken by the payee. In both cases there was an evident intention of the father to retain the possession and control of the notes. The principle there decided is the same as is here in controversy.

The case *Foglesong* v. *Wickard*, 75 Ind. 258, was based in some respects on a similar transaction, though in that case the notes were made payable to the father, and this court held that, as long as the father held the possession of the notes, it was not a perfected gift.

It is not insisted that there was an actual delivery of the note, and from the evidence, we do not think there was any constructive delivery of it, and it is admitted that without a delivery there could be no perfected gift.

We think the verdict of the jury was sustained by the evidence, and was not contrary to law.

The court below did not err in overruling the motion for a new trial. The judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and the same is, in all things affirmed, with costs.