Filed March 27, 1886.

---

No. 12,314.

## THE NATIONAL BANK AND LOAN COMPANY v. DUNN ET AL.

PRACTICE.—*Motion to Strike Out Part of Deposition.*—*New Trial.*—Error in refusing to strike out parts of a deposition, to be available on appeal, must first be assigned as a cause for a new trial.

SAME.—*Objection to Validity of Deposition Must be Made Before Trial.*—Under section 439, R. S. 1881, an objection to the reading of a deposition, made after the trial is entered upon, on the ground that it was taken without authority of law, comes too late. When the jury is sworn, the trial is commenced within the meaning of such section.

CONTRACT.—*Sale of Engine.*—*Rescission.*—*Evidence.*—A party who is entitled to a rescission of a contract for the purchase of an engine, because it fails to comply with the warranty, may also rescind as to a belt, which is a part of the engine equipment, although the latter is not defective, and evidence as to its return to the vendor is admissible.

SAME.—*Defects in Construction.*—*Warranty.* – A machinist who repaired an engine two years after its purchase may testify as to defects in its structure and general character, where the issue is as to its fulfilment of the warranty given upon its sale.

SAME.— *Evidence as to Powers of Another Engine.*— *Comparison.*— Evidence merely as to the powers of another engine of the same make and pattern, used in running machinery of the kind applied in testing the engine in controversy, is admissible, there being no formal comparison between the two attempted.

SAME.—*Stipulation for Notice.*— *Waiver.*—Although the written contract of sale provides that if, after a trial of one week, the engine fails to work

well, the purchaser shall give the vendor written notice of its failure, the latter may, by subsequent conduct, waive his right to insist upon such notice. For evidence considered in this connection see opinion.

From the Hamilton Circuit Court.

*T. J. Kane, T. P. Davis, C. F. Rooker* and *A. W. Hatch,* for appellant.

*D. Moss* and *R. R. Stephenson,* for appellees.

NIBLACK, C. J.—This was an action by the National Bank and Loan Company of Watertown, New York, as the assignee of the Northwestern Manufacturing and Car Company, against Levi Dunn and Matthew L. Dunn, upon a promissory note for $284, dated August 1st, 1882, and payable December 1st, 1883, with interest at the rate of eight per cent. after maturity. The manufacturing and car company was made a defendant to answer as to its interest in the note, but it made no defence.

The defendants, the makers of the note, answered that the note was executed to secure the first of three annual instalments of purchase-money agreed to be paid for a steam engine and rubber belt to be used in propelling a threshing machine and other similar machinery; that the manufacturing and car company, the payee of the note, had warranted the engine to be built of good material and to be capable of doing first-class work, and of developing the power at which it was rated; that it was not in fact built of good material; that under the most skilful management it failed to do first-class work and to develop the power at which it was rated, and was essentially defective in certain particularly enumerated respects; that the defendant Levi Dunn was the principal obligor in the note, and that the other defendant, Matthew L. Dunn, was only surety thereon. Reply in general denial, and a trial resulted in a verdict and judgment for the defendants.

Through the medium of two depositions taken for that purpose, one Bennick was made a witness for the defendants

The National Bank and Loan Company v. Dunn et al.

at the trial.   Bennick's first deposition was taken on the 11th day of April, 1884, and the second upon notice, but without leave of court, on the 9th day of August, 1884.   Before the trial began, counsel for the plaintiff moved to strike questions and answers numbered 6, 7, 8, 9 and 10, out of the deposition of Bennick lastly taken as above, and the motion was sustained as to the last two named questions and answers, but was overruled as to all the rest.   After Bennick's first deposition was read at the trial, counsel for the plaintiff objected to the reading of his second deposition, upon the ground that it had been taken without leave of the court, but the objection was overruled, and the deposition was read in evidence.

Error is assigned here upon the refusal of the circuit court to strike out questions and answers numbered 6, 7 and 8, of Bennick's second deposition as above stated, but that refusal was not assigned as a cause for a new trial, as was, in any event, necessary to make the plaintiff's exception to it available, and hence no question upon such refusal has been properly reserved for decision in this court.

The ruling was upon a matter which affected the evidence thereafter adduced at the trial, and, therefore, if erroneous, was good cause for a new trial.   Hutts v. Shoaf, 88 Ind. 395; Hege v. Newsom, 96 Ind. 426.

The reading of Bennick's second deposition in evidence was assigned as a cause for a new trial, and, in that way, a question is regularly reserved upon that branch of the proceedings below.

. If the deposition in question was unlawfully taken, or, which is the same thing, was taken without authority of law, that was good cause for suppressing it, but to have made such an objection effectual it must have been interposed before entering upon the trial of the cause.

Section 439, R. S. 1881, provides that "All objections to the validity of any deposition, or its admissibility in evidence, shall be made before entering upon the trial; not afterward.   But any deposition after the commencement of the

trial may be suppressed, if any matter which is not disclosed in the deposition appears, which is sufficient to authorize such suppression."

When the jury is sworn, the trial is entered upon, or commenced, within the meaning of this section. *Glenn* v. *Clore*, 42 Ind. 60. The objection to the admissibility of Bennick's second deposition in evidence, therefore, came too late. *Graydon* v. *Gaddis*, 20 Ind. 515; *Stull* v. *Howard*, 26 Ind. 456; *McGinnis* v. *Gabe*, 78 Ind. 457; *Newman* v. *Manning*, 89 Ind. 422.

It was shown by the evidence, that Levi Dunn purchased the engine and belt in controversy, of S. S. Helms & Co., persons doing business in, and local agents for the manufacturing and car copmany at, Noblesville, in Hamilton county; also, that in the latter part of July, 1883, the said Dunn, claiming to have fairly and fully tested the quality and capacity of the engine and to have ascertained that it was defective in its construction and hopelessly unable to do first-class work, as it was warranted to do, returned said engine to the firm of Case & Helms, as the successors of S. S. Helms & Co., and left it at their warehouse in Noblesville. There was no evidence tending to show that there was any defect in the belt. Levi Dunn, while testifying in his own behalf, stated that in a day or two after he returned the engine to Case & Helms, he sent back the belt and caused it to be left at the same warehouse near the engine.

The plaintiff thereupon moved the court to strike out what had been said about the return of the belt, upon the ground that, as no defect in the belt had been shown, and hence no cause for a rescission of the contract of sale as to the belt had been established, the evidence concerning its return was irrelevant and immaterial to any question then before the court, but the court overruled the motion, and a question is made upon the refusal of the court to sustain that motion.

Considering the purpose for which the engine was pur-

chased, and the use for which it was plainly intended, the belt was merely auxiliary to and a part of the equipment of the engine, and if the witness, Dunn, had sufficient cause for rescinding as to the engine, his right of rescission extended also to the belt. No sufficient reason was consequently assigned for striking out the evidence concerning the return of the belt.

It came out in the evidence that Levi Dunn purchased the engine late in the summer of 1882, when the threshing season was nearly over, and he was asked, and, over the objection of counsel for the plaintiff, was permitted, to explain why he purchased the engine at that particular time. This question and answer were relatively immaterial to the real issue between the parties, but as they formed a merely incidental part of the witness's narrative of his connection with the engine, we are unable to see any reason for holding that the answer to the question was probably injurious to the plaintiff.

One Bending, a practical machinist, testified to having done some repairs upon the engine in the latter part of the year 1884, and to some peculiarities and apparent defects in its construction, in addition to the bad repair it was in at the time. Counsel for the plaintiff moved, but unsuccessfully, to have Bending's testimony struck out upon the ground that the time at which the witness examined the engine was too remote from that in which Levi Dunn had the possession and use of it. As the evidence related mostly to the structure and general character of the engine, it was pertinent to the issue between the parties, and, therefore, ought not to have been struck out.

One Gilkey testified that he assisted Levi Dunn in work with the engine after the latter got possession of it, and that on the fourth day after Dunn commenced to use it, he, witness, was sent to Mr. Helms, of the firm of S. S. Helms & Co., with a message concerning the engine. The witness was then permitted to state, over the objection of counsel for the

plaintiff, that he told Helms that the engine was not giving satisfaction, and that Dunn wanted him, Helms, to go out and see after it.   Considered in connection with the context and with the theory upon which the defence was based, as will be hereafter more fully shown, we see no objection to the statement made by the witness.

The defendant, Matthew L. Dunn, was also a witness on behalf of the defendants.   He stated that he was the owner of an engine manufactured at the same place, and rated at the same power as the one in litigation, and that he used it to run the same kind of a threshing machine or separator as the one with which his co-defendant, Levi Dunn, had tested the quality and capacity of the engine so in litigation.   He was then asked to state how much wheat he could thresh in a day with his engine and separator, and, over objection, was allowed to answer that question.   In the examination of the witness which led to the question thus propounded, no formal comparison between .the two engines, or with other engines generally, was seemingly attempted.   The question was asked apparently with a view to ascertain in an incidental and inferential way the possibilities of another engine of the same make and pattern, and in that view it was not obnoxious to the rule recognized concerning the comparison of machinery, in the case of the *McCormick, etc., Co.* v. *Gray,* 100 Ind. 285, and was not an improper question.

It was made to appear by the evidence that the engine in question in this case was bargained and sold to Levi Dunn upon certain written conditions, stipulations and representations submitted to him by Helms & Co., the local agents at Noblesville; that one of the conditions was, that the manufacturing and car company warranted the engine to be of good materials, and, with good management, capable of doing first-class work, and of developing the power at which it was rated ; that another condition was that the said Levi Dunn was to execute promissory notes for the aggregate sum of $870—one for $290, payable October 1st, 1883, another for a

like sum, payable October 1st, 1884, and a third for the same sum, payable October 1st, 1885; that still another condition was, that the said Levi. Dunn was to follow the directions, given him for that purpose, in starting and operating the engine, and if, after giving the engine a fair trial of one week, it should not work well, he was to give written notice to the said Helms & Co. and the manufacturers, stating wherein it failed to do good work; and allow a reasonable time for remedying defects, if any; that if the defects could not be remedied, the trade was to be rescinded; that the continued possession of the engine should be evidence of satisfaction with it.

There was also evidence tending to show that Levi Dunn got possession of the engine under his contract of purchase some time rather late in August, 1882, and when the threshing season for that year had nearly expired; that he was not required at the time to execute notes for the price of the engine; that, though well managed, the engine from the first failed to do first-class work, and to develop anything near the power at which it was rated, and that it thereafter continuously failed to do first-class work and to develop the power at which it was rated, so long as it continued in the possession of the said Dunn under his purchase; that on several occasions persons were sent on behalf of the manufacturing and car company to examine the engine, and, if practicable, to remedy its defects, but without avail in every instance, notwithstanding encouraging assurances from time to time; that some time, perhaps in October, 1882, an agent of the company induced the said Levi Dunn and his co-defendant, Matthew L. Dunn, to execute three promissory notes for the aggregate sum of $850, which seemed then to have been the estimated price of the engine at that time, and of which the note sued on in this case was the first of the series; that these notes were executed upon assurances that if they were so executed, and the engine should be retained by the said Levi Dunn, the company would, before the threshing season would open the following summer, remedy all defects in the ma-

chine and cause it to do first-class work, as it was warranted to do in the first instance; that, nothing having been done to the engine in the meantime, it failed to do any better work than it had previously done, when the threshing season commenced in July, 1883; that accordingly, on Monday, the 23d day of July, 1883, the said Levi Dunn gave the company written notice of the continued failure of the engine to work as it was represented it would, and that unless the defects in such engine should be remedied by the next Saturday, the 28th day of that month, he would return it to the agents from whom he obtained it; that no repairs upon, or change in, said engine having been made as demanded by such notice, the said Levi Dunn, on the Monday following the Saturday named, returned the engine to Case & Helms at Noblesville, as herein above stated; that the notice lastly referred to was the first and only written notice which was given to the company of the defective and inferior quality of the engine.

It is claimed that inasmuch as Dunn, the principal defendant, failed to give written notice of the failure of the engine to perform satisfactorily within a week after it came into his possession, subsequent notice was of no avail, and that his continuance in the possession of the engine after the first week was evidence of his satisfaction with the work which the engine did; that consequently a new trial ought to have been granted for insufficiency of the evidence to sustain the verdict.

In response to a special interrogatory addressed to them, the jury answered in effect that, under all the circumstances as disclosed by the evidence, the written notice sent by Levi Dunn on the 23d day of July, 1883, was given within a reasonable time after the engine came into his possession, and we think there was evidence tending very satisfactorily to support the inference thus drawn by the jury. As has been seen, the contract of purchase was not closed up by the execution of notes to secure the purchase-money for near, if not quite,

two months after Levi Dunn came into possession of the engine, and the notes were then given and dated back upon an agreement different from and inconsistent with the previous written contract. These notes were, also, executed for a smaller aggregate sum than was originally agreed upon. In view of these facts, and others of a kindred character, the jury had ample reason for coming to the conclusion that the company had waived its right to insist upon a written notice of any defect which had been discovered in the engine within a week after it had been put upon trial. Upon this branch of the case, see the case of *McCormick, etc., Co.* v. *Gray, supra,* herein above cited. The facts of this case clearly distinguish it from the case of *Brown* v. *Russell & Co.,* 105 Ind. 46.

Questions were, also, reserved upon some of the instructions given, as well as others refused, at the trial. But what we have said upon the evidence practically disposes of all the material questions presented by any of the instructions, whether given or refused. As we construe the evidence, we would not, in any event, feel justified in reversing the judgment upon any question arising upon the instructions. R. S. 1881, section 1891.

The judgment is affirmed, with costs.

Filed April 3, 1886.