Pape v. Lathrop.

---

PAPE v. LATHROP.

[No. 1,947.   Filed Feb. 18, 1897.   Rehearing denied Dec. 15, 1897.]

APPEAL AND ERROR.—*Exceptions.*—*Deposition.*—A ruling on a motion to strike out parts of a deposition must be assigned as cause for new trial in order to present any question thereon on appeal.   *p. 639.*

NEW TRIAL.—*Failure to Sign Motion For.*—*Waiver.*—Where a motion for a new trial was filed and passed upon by the trial court

Pape *v.* Lathrop.

without objection as to the form or substance thereof, the mere fact of the omission of counsel to sign same will be deemed waived. *p. 640.*

CONTRACT.—*Breach Of.—Measure of Damages.—Master and Servant.* —In an action by an employe for a breach of the contract of his employment, the measure of damages is the difference between the contract price and what he earned or might have earned during such time. *p. 643.*

EVIDENCE.—*Breach of Contract.—Master and Servant.—Inventions of Servant.*—In the trial of an action by an employe against his employer for a breach of his contract of employment, evidence by plaintiff of the value of an invention made by him and adopted by his employer was improperly admitted, where by the terms of the employment defendant was to have the use of any inventions made by plaintiff during such service. *p. 643.*

MASTER AND SERVANT.—*Inventions by Servant.*—Where a servant, during his employment, and while using the time and material of his employer, invents new devices, compounds, or machinery, or any useful appliances in connection with the business of his employer, and which are used in the business of the employer, with the intention or understanding that they shall belong to the employer, the same become his absolute property, and such inventor has no interest therein. *p. 643.*

EVIDENCE.—*Improper Admission Of.—Presumption.*—Where evidence has been improperly admitted it will be presumed that it influenced the result of the cause, unless the contrary clearly appears. *p. 643.*

SAME.—*Master and Servant.—Breach of Contract.*—In the trial of an action for breach of contract of employment, it is error to admit evidence as to the motive of employer in employing or discharging employe. *pp. 644-646.*

SAME.—*Impeachment.*—An impeaching question must be definite, directed to a certain fact or facts, and within the limits of a fixed time. *p. 646.*

SAME.—*Witness.—Impeachment.*—A witness can only be impeached by proof of statements made out of court contrary to the testimony of the witness, when such testimony relates to a material matter in issue. *p. 650.*

MASTER AND SERVANT.—*Discharge of Servant.—Breach of Contract.— Measure of Damages.*—A servant who has been wrongfully discharged may sue at once or wait until the expiration of his term of employment. If he choose the former, the damages recoverable are the amount of his wages at the contract price, to the date of the trial, less any sum it is shown he has earned, or might have earned since his discharge. *pp. 653-656.*

From the Wells Circuit Court. *Reversed.*

*T. E. Ellison, W. Leonard* and *E. Leonard,* for appellant.

*P. A. Randall, N. D. Doughman* and *A. A. Chapin,* for appellee.

WILEY, J.—On the 1st day of November, 1892, appellant and appellee entered into a written contract as follows: "This contract made this 1st day of November, 1892, by and between Fleming Manufacturing Company, of Fort Wayne, county of Allen, party of the first part, and E. L. Lathrop, of Fort Wayne, party of the second part. Witnesseth, that for the considerations hereinafter mentioned on the part of the second party, the first party agrees to, and does hereby, hire the second party for a period of three years, from November 1, 1892, at a salary of one hundred and fifty dollars ($150.00) per month, together with the legitimate traveling expenses incurred for the first party, the second party agrees as follows: (1) To render services to the best of his ability, as inventor, mechanic, and general traveling man for the benefit of the business of the first party; (2) to give no influence or help in any way to any competing person during the continuance of this contract; (3) to render at the end of each week an itemized expense account of the money expended for the first party; (4) to make application for all improvements and inventions in road machines desired by the first party, said inventions, if patentable, to be assigned to party of the first part for their interest, use, and keeping during the life of the patent, the expenses to be borne by the first party, and first party agrees to make no changes in any machine without consultation with party of second part."

The appellee sued appellant for an alleged breach of the foregoing contract, and drafted his complaint in

two paragraphs. The substance of the breach of the contract, as averred in the first paragraph of the complaint is: That appellee continued in the employment of appellant, under said contract, until June 15, 1893, when appellant, without cause, dismissed him; that by the terms of said contract, appellee was to make application for patents upon inventions for the improvement of appellant's road machines; that prior to November 1, 1892, appellee had been working upon and maturing an improvement upon what is known as the "Reversible Road Grader;" the said improvement was a shifting axle and an improved style of front coupling; that appellee made known to one Schneider, appellant's foreman, his ideas as to said improvement; that after appellee entered into said contract, he went to building a road machine with said improvements, and applied for the patent thereon, which he was to assign to appellant; that since appellee has been discharged from his said employment, appellant has made application in the name of his said foreman, Schneider, for patents upon said improvements upon his road machines; that said device was of great value when patented, and worth $2,500.00. The complaint further avers that appellee performed all of the conditions of the contract on his part, but that the appellant did not, in this: "that he commenced a system of abuse upon plaintiff some time prior to his discharge; that his foreman, the said Schneider, was cruel and abusive, and all of which was done for the purpose of driving the plaintiff out of the employ of defendant, to get rid of him." The complaint further charges that appellee tendered his services to appellant after June 15, 1893, and was ready and willing to carry out his part of said contract.

The breach of the contract alleged in the second paragraph of complaint is so nearly identical to the first, that it is unnecessary to set it out again.

The appellant assailed each paragraph of the complaint by a demurrer, which the court overruled and appellant excepted.   The appellant answered in four paragraphs:

1st.  General denial.

2d.  That soon after appellant employed appellee, as set out in the contract sued upon, the appellee, without cause or reason, became very much offended at one Schneider, appellant's foreman in his said factory, and would often during said employment, without authority from appellant, countermand orders and instructions given by said foreman, to the employes in his said factory, which said employes were under said foreman, and which resulted in great confusion among said employes and great loss and damage to appellant's business; that appellee's ill-feeling toward said foreman grew to such an extent that appellee notified appellant that said foreman would have to quit the employment of said appellant; that if said Schneider did not quit or was not discharged from appellant's employment, he, appellee, would quit; that said appellee demanded said discharge in an insolent and impudent manner, and openly and repeatedly, in the hearing of other employes of appellant, boasted that he, or said Schneider would have to quit; that they could not work in the same factory, and that he did not have to work for defendant (appellant); that these acts on the part of appellee engendered an ill feeling on the part of other employes toward said foreman, which appellee tried to aggravate to such an extent that several of said employes quit appellant's employ, which resulted in great injury to his said business; that for the purpose of avoiding further difficulty between appellee and said foreman, and further trouble among the employes, appellant sent appellee out on the road to sell goods, in order to keep him away from said

factory, and did keep him away for six weeks; that appellee returned on the —— day of ——————, 1893, and in direct violation of positive orders given by appellant to appellee, not to enter the shop or factory, or that department under said foreman, or to in any way interfere with said Schneider, and in direct violation of an agreement and understanding between appellant and appellee, said appellee entered said foreman's department, and without cause or reason, during working hours, and while said foreman was in the discharge of his duties for appellant, assaulted said foreman and cruelly and inhumanly beat and bruised him, from the effects of which he was incapacitated from fully discharging his duties to appellant, and that he has not yet fully recovered, which resulted in great damage and injury to appellant's business. That for these reasons, and to prevent further loss and trouble among his employes, appellant discharged appellee.

3d. That appellant discharged appellee, and offered to and did pay him the amount due him under the contract, to all of which appellee agreed and consented, and received and accepted the said amount for his services.

4th. The fourth paragraph is a counterclaim, and avers that appellant runs and operates a large factory, and had, at the time appellee was in his employment, a foreman, by the name of Schneider; that on the —— day of June, 1893, while said foreman was in the discharge of his duties as such foreman, and without cause or reason, in the presence of a large number of other employes, appellee assaulted and beat said foreman in a cruel and inhuman manner, cutting, bruising, and injuring him so severely that he was unable for a month to discharge his said duties; that he has not yet fully recovered; that said assault created great

confusion in said factory, causing appellant to suffer great damage, by reason of the loss of said foreman's services, and loss of time of other employes, in the sum of $200.00, etc.

Appellee demurred to the three affirmative answers of appellant, which demurrer was overruled and appellee excepted. Reply by general denial. This cause was commenced in the Allen Circuit Court, and after a trial there, resulting in a verdict for appellee, and the granting of a new trial, the venue was changed to the Wells Circuit Court, where a trial by jury resulted in a general verdict for appellee for $1,846.12. Appellant moved in writing for a new trial, and assigned eighty-nine reasons therefor. His motion was overruled, judgment rendered upon the verdict, and he appeals, and has assigned errors as follows:

1. The court erred in overruling motion for a new trial.

2. The court erred in overruling appellant's motion to suppress portions of the deposition of Herman Hohnholz.

3. The court erred in overruling appellant's motion to strike out portions of the deposition of T. J. Hill.

The appellee has assigned cross-errors as follows:

1. The court erred in overruling appellee's demurrer to the third paragraph of appellant's answer.

2. The court erred in overruling appellee's demurrer to the fourth paragraph of appellant's answer.

The second and third assignments of error on behalf of appellant, do not present any question for our consideration. In Ohio, etc., R. W. Co. v. Judy, 120 Ind. 397, it is said: "A ruling on a motion to strike out parts of depositions must be assigned as cause for a new trial in order to present any question on appeal." This is the settled rule in this State. Hatton v. Jones, 78 Ind. 466; Bank and Loan Co. v. Dunn, 106 Ind. 110.

This leaves for our consideration the first assignment of error, which calls in question the action of the court in overruling appellant's motion for a new trial. It is urged by appellee that the motion for a new trial is not properly in the record and cannot be considered for two reasons.

1. The record does not show that the motion was presented to the court.

2. It is not signed by counsel.

We do not think these objections are well taken. On March 21, 1895, during the March term of the Wells Circuit Court, and the term at which the case was tried, appellant presented a certain bill of exceptions, which was examined and signed by the judge, and immediately following the record showing the signature of the judge to this bill of exceptions is this entry: "Defendant also files motion and written reasons for a new trial in this behalf in these words, to wit:" Then follows the motion in full. It is true the record does not show that the motion was signed by counsel, but the court and counsel for appellee recognized it as a valid motion; the court subsequently overruled it and pronounced judgment in favor of appellee on the verdict. If counsel for appellee had raised the question below, the omission of counsel to sign the motion for a new trial could have been remedied, or upon their failure or refusal to do so, after their attention had been called to the omission, such motion might have been stricken from the files, on proper application; but when the court regarded the motion for a new trial as a perfect and statutory motion, and acted upon it by overruling it, and when no objection was made in the trial court as being in any wise defective on appeal, the mere fact of the omission of counsel to sign it will be deemed waived.

Before taking up for consideration any of the ques-

tions discussed by counsel, we deem it important to state some of the material facts disclosed by the evidence. The appellant was a large manufacturer, doing business under the name and style of "The Fleming Manufacturing Company," at Fort Wayne, Indiana. He had in his employ a number of men, who were under the immediate control of a general manager and foreman. One Schneider was the foreman, and a mechanic of skill and experience, and had been in the service of appellant for some years. Appellee had not been in the employment of appellant but a short time, until, for some undisclosed reason, an ill-feeling and jealousy arose between appellee and Schneider, which became intensified by the lapse of time and their continued association. Appellee claimed that he was the inventor for some useful device for a road grader, and that he and Schneider made a joint application for a patent. It was also claimed by Schneider that he had formerly made application for a patent involving the same device, and it was decided by the commissioner of patents that Schneider alone was entitled to have issued to him the patent therefor, and that he was the original inventor. Appellant knew of the ill feeling and jealousy existing between appellee and Schneider, and to avoid any collision or trouble between them, sent appellee out to travel for him, in the sale of his manufactured products, and he was gone about six weeks. Upon his return, he was told by appellant that in his absence matters at the shops had gone on smoothly, and there had been no trouble, and directed appellee that he must not go in that part of the shops where Schneider had charge, as there was likely to be trouble between them if they came together, to which appellee assented. On or about June 12, 1893, appellant directed

appellee to take charge of loading a car of graders for shipment, and while he was so engaged, appellant went to the car and inquired how he was getting on, to which he replied all right. Appellant also asked him if he needed more help, to which he replied that he did not, and whereupon appellant drove away to his private office. Within a few minutes after appellant left the car, appellee went directly to that part of the shops where Schneider was in charge and in the discharge of his duties, and there, in the presence of the employes, demanded of Schneider another man to aid in loading the car, which Schneider refused, and informed appellee that he was not permitted to let men go out of the shop. Angry, vulgar, insulting, and blasphemous language passed between them, followed by menacing motions and gesticulations, when appellee took hold of Schneider, threw him violently to the ground, his head striking an anvil, and struck him at least twice with his fist, inflicting upon him severe injuries. He was arrested for an assault and battery, plead guilty, and was fined. Before this occurrence, however, to show the animus of appellee toward Schneider, it appears, in the evidence, appellee said to one McDonald, an employe of appellant: "I will pay any man's fine that whips Schneider," and added, "I dare not do it." The second or third day after the trouble between appellee and Schneider, the former returned to the works of appellant, reported to the manager, who paid him his wages due, and informed him that his services were at an end. These are the substantial facts upon which appellee bases his right to a recovery, and with these facts in view we proceed to the examination of some of the questions or errors which appellant has discussed.

The first error of which appellant complains, is the admission of certain evidence given by appellee. In

his examination he stated that he had invented a shifting axle for a road grader; that he had applied for a patent for the same jointly with Schneider; that appellant had adopted the shifting axle as a part of his machine, and was then using it. He was then asked this question: "You may state what was the value of the invention or improvement you have described, known as the shifting axle?" Over a proper objection and exception, appellee was permitted to answer the question, and said: "From three to five thousand dollars." We are unable to see the pertinency of this question and answer to the issues involved. The measure of damages in cases of this character has been settled for years by the adjudication of the courts of last resort in every state in the Union, and there is no longer room for doubt or speculation. The appellee was seeking a recovery for a breach of contract of employment for a specific period, and his measure of damages, briefly stated, was the difference between the contract price and what he did or might have earned. The value of the invention, if it was his invention, had nothing to do with his measure of damages, and was not pertinent to the issues. More than this, his contract with appellant provided that all improvements and inventions in road machines, made or procured by appellee, should be the property of appellant, etc. It is settled law that where a servant, during his employment and while using the time and material of his employer, invents new devices, compounds, or machinery, or any useful appliances in connection with the business of his employer, and which are used in the business of the employer, with the intention or understanding that they shall belong to the employer, the same become his absolute property, and such inventor has no interest therein. *Baldwin* v. *Von Micheroux*, 25 N. Y. Supp. 857; *Gill* v. *United States*, 160 U. S. 426.

In this case, the rule is emphasized by the express terms of the contract. *McAleer* v. *United States*, 150 U. S. 424.

Both by the contract between appellant and appellee, and the law, the ownership of the patented shifting axle, claimed by appellee, was determined, and hence the question of its value was foreign to the issues. The tendency of the evidence was to prejudice the jury against the appellant, and it was error for the court to permit the question to be propounded and answered. Where evidence has been improperly admitted, it will be presumed that it influenced the result, unless the contrary clearly appears. *Baker* v. *Dessauer*, 49 Ind. 28; *Thompson* v. *Wilson*, 34 Ind. 94; *Barnett* v. *Leonard*, 66 Ind. 422.

Our conclusion upon this question makes it unnecessary to notice the second alleged error which appellant discusses, and which calls in question the ruling of the court, in excluding certain offered evidence, on the cross-examination of appellee, relating to his knowledge of the fact that Schneider had applied for and been granted a patent for the same device claimed by him, and that the question of the rightful owner of the patent had been decided against him. It is sufficient to say that neither of these inquiries were within the issues, and did not throw any light upon the main controversy.

The appellant insists that the court below erred in admitting certain evidence over his objection, the object of which was to fix a motive for the discharge of appellee other than that pleaded in the answer. We quote some of them, and our decision of them will be of controlling influence as to all others of a like character. On cross-examination of appellant, these questions were asked him, viz:

1.  "You discharged him (appellee) for going into

the shop in violation of your orders?" Answer. "Yes, sir."

2. "You discharged him (appellee) because he went into the shop?" Answer. "Yes, and in having a fight in working hours with Schneider."

The questions just quoted were immediately followed by those to which appellant objected.

3. "Were you not intending to discharge him (appellee) long before that?"

4. "I will ask you to state if you have not stated on a previous occasion that you only kept Mr. Lathrop for some time prior to the time you actually did discharge him, to get his deposition in a law suit with the Western Scraper Company?"

And in rebuttal, Harmon Hohnholz was called as a witness for appellee, and in his examination in chief was asked these questions:

5. "Did you have a conversation with defendant (appellant) in reference to the employment or contract he had with Mr. Lathrop?" Answer. "I did."

6. "You may state what that conversation was?" Answer. "Mr. Pape told me he had hired Mr. Lathrop for $1,800.00 a year, and as I thought I was a good salesman, I thought I might have more, and I objected and told Mr. Pape I was not satisfied with that, and he explained to me. I was to keep quiet; he merely paid him $1,800.00 because he needed his testimony in some law suit, and after he got that testimony, he would find a way to shift him."

We have numbered these questions for convenient reference in disposing of them. In number three appellant was asked if he had not intended to discharge appellee long before he actually did. Even if appellant had intended to discharge appellee prior to the time he did, such fact afforded no reason or motive for his discharge at the time it was made. It was not a ques-

tion of a previous intention or motive, but a question as to whether or not there was a justifiable cause for the discharge.

Question number four is so radically out of line with sound principle and the adjudicated cases, that it seems useless to discuss it. If the question had any purpose in view, it was either to lay the foundation for an impeachment or contradiction, or to establish a motive on the part of appellant for the discharge of appellee, and in either event the question was an improper one. If the purpose was to lay the foundation for an impeachment, it was wanting in three essential elements, to wit: (1) No time is fixed; (2) no place is designated, and (3) no person is named. When an impeaching question is asked a witness, the rules of evidence and fair dealing guarantee to him, to the end that he may, within reasonable bounds protect himself, and that he may not be taken unaware, that the question shall be definite, directed to a certain fact or facts, and within the limits of a reasonably fixed time. We know of no exception to this rule. If the purpose of the question was to establish a motive, it is equally objectionable as will appear from a further discussion of the question.

Questions five and six were also objectionable. The witness Hohnholz was called in rebuttal. We have searched the record in vain to find where appellant was asked about any conversation with him, and hence this part of his evidence was not in rebuttal of any evidence offered by appellant. These two questions also sought to elicit some facts from Hohnholz to establish a motive, for the discharge of appellee. The answer to question six is also objectionable for the reason it is not responsive to the question, and is merely the conclusion of the witness, without detailing the conversation asked for. The objections to

these questions were all properly saved, and the appellant also took the double precaution to move to strike out both the questions and answers, which motion was overruled.

Each of these questions, in our judgment, were objectionable, and it was error for the court to overrule the objections thereto. The motive or intention for employing or discharging appellee were not subjects of legitimate inquiry. The sole issue was whether or not there was a breach of the contract of employment. If there was a breach, and that breach had been committed by appellant, he was liable to respond in damages. If there was a breach on the part of the appellee, and he was discharged by reason thereof, he has no cause of action. Appellant grounded his defense upon the affirmative matter charged in his answer, and if he has failed to establish such affirmative matter by a fair preponderance of the evidence, his defense must fail, and no ulterior motive on his part can be inquired into.

The appellee had made a *prima facie* case when he had shown the execution of his contract of employment and established the fact of his discharge before the expiration of the term of his employment.

The motive of the appellant, either in employing or discharging him, could not add to the measure of damages, and the only effect such evidence could have, as it could throw no light upon the merits of the controversy, was to poison the minds of the jurors against the appellant, and impress upon them that appellee had performed for him a valuable service, for which he had not received just remuneration.

That the motive or intention of the master in discharging his servant, for cause, cannot be inquired into, is sustained by the authorities. Wood on Master and Servant, 230; *Spotswood* v. *Barrow*, 5 Exch. 110;

*Jackson* v. *New York, etc., Hospital,* 26 N. Y. Supp. 27. The case last cited is directly in point. The plaintiff, in that case, had contracted with defendant for five years, and within a short time defendant endeavored to get his consent to an engagement terminable on thirty days' notice. This proposed new agreement was admitted in evidence over the objection and exception of defendant, for the purpose, as counsel stated, to establish, together with other evidence, the fact that, almost from the beginning of the contract, defendant was seeking some chance to terminate it. The court, in its opinion, quotes from the brief of the counsel for the respondent as follows: "This paper was introduced in evidence to show, with other testimony, that the defendant almost from the beginning of the contract was seeking some chance to terminate it, and that it was a part of a general scheme to get some pretext for getting rid of the plaintiff without being made liable for damages resulting from a breach of the contract. This was a part of the theory upon which plaintiff tried this action, and for that purpose the paper was admissible in evidence." In response to this argument, the court says: "But 'the motive of the master in discharging the servant is not the issue, nor is it material. The simple question is whether a legal cause existed for such discharge.' * * * * * * In the present case, no matter what the motive of the defendant in dismissing the plaintiff,—whether, as he urges, because the defendant sought a better bargain with another,—the sole issue on the trial was, did justifiable cause for plaintiff's discharge exist? If it did not, the verdict was necessarily for the plaintiff; if it did exist, the verdict was necessarily for the defendant. * * * * * * The evidence was incompetent for any purpose, and the error of its admission is of obvious injury to the appellant." The evidence was

incompetent, and appellant's objections to the questions and his motions to strike out the answers should have been sustained.

Henry Schneider was called as a witness on behalf of appellant. On cross-examination, and over appellant's objection, the following questions were propounded to him:

1. "I will ask you to state whether or not in the shop a short time before Mr. Lathrop came back from Illinois, whether you stated to John Flashman and Herman Miller, or either of them, in a conversation relating to Lathrop, that if he came back you would get a way to fix him, or get rid of him?" Ans. "I did not."

2. "Mr. Schneider, I will ask you to state to the court and jury whether or not you stated to Herman A. Miller, while Lathrop was out on the road, about two weeks before the difficulty, that you came up to Miller at his place of work in the shop you were working in, and you said, referring to Lathrop: 'That damned ——— ——— ——— (we omit the vulgar epithets used, as they are too offensive to find a place in the book) is going to come home soon, but we have got it all 'fixed so he won't stay here.' Did you make that statement at the time and place I have stated to Mr. Harmon A. Miller?" Answer. "No, sir."

Other like questions, pertaining to the same alleged conversation with Miller and Stroub were asked Schneider, but it is not necessary to embody them in this opinion.

On rebuttal, Miller and Stroub were permitted, over the objection of appellant, to contradict Schneider in regard to the conversation he had with them relating to what he said, or is charged to have said, about getting rid of appellee on his return from Illinois. There is no rule of evidence under which this testimony was admissible. It cannot be contended

that even if Schneider did state to Miller and Stroub, what they say he did, in regard to appellee, it would not bind the appellant, in the absence of a showing that he was authorized to speak for appellant, or that there was a conspiracy between appellant and Schneider, to the end they would find some excuse to get rid of appellee by discharging him. The conversations between Schneider and Miller and Stroub, in the absence of the appellant, were not binding on him, and if such conversations did occur, they did not relate to any material matter in issue, and the only object of the evidence was to impeach Schneider, and thus discredit him before the jury. The error, therefore, in admitting it was palpable, for in this State the rule is firmly established that a witness can only be impeached by proof of statements made out of court contrary to the testimony of the witness, when such testimony relates to a material matter in issue. *Paxton* v. *Dye*, 26 Ind. 393; *Seller* v. *Jenkins*, 97 Ind. 430; *Horne* v. *Williams*, 12 Ind. 324; *Fogleman* v. *State*, 32 Ind. 145.

We come next to a brief consideration of some of the instructions given by the court, and the refusal to give others requested by appellant. At the request of appellee the court gave instruction number eleven as follows:

"To justify a person in the right of self-defense it is not always necessary that he shall wait until the blow is struck or the wound given; but if he reasonably believe from the situation and the surroundings that he is in imminent danger, and great bodily harm, and acting upon such reasonable appearances, being without fault, he may, in defense of his person, strike at once, and may continue such defense until he no longer reasonably believes that he is in further danger of great bodily harm." * * *

While this instruction correctly states an abstract proposition of law, applicable to a criminal case, where a person is on trial for his life, or for an assault and battery, yet it has no application to the case at bar. It proceeds upon the theory, that notwithstanding the fact that appellee went to the shop where Schneider was foreman and was engaged in the service of his master, against the express orders of appellant, that before appellant had a right to discharge him, it devolved upon appellant to show that he had committed an assault and battery on the person of his foreman; or that he was in the lawful exercise of his right of self-defense. This is not the law. The instruction was misleading, and not applicable to any issue or facts in the case, and it was error to give it.

Instruction number three, tendered by appellant, is as follows: "The defendant in one paragraph of his answer, says that he was carrying on a large business, and employed a large number of men, among whom was a foreman by the name of Schneider; that he, the defendant directed the plaintiff to stay away from that part of the factory in which he carried on the business that was overseen by said Schneider; that notwithstanding such orders, the plaintiff went into that part of the factory where he knew said Schneider was engaged as foreman of part of defendant's business; that in the presence of other employes of the defendant, plaintiff assaulted and beat said Schneider while acting as such foreman. If you find from this evidence that the defendant did have such business; that a part of it was managed and controlled by a foreman by the name of Schneider; that the defendant directed the plaintiff to stay away from that part of his factory, and not have anything to do with, or interfere with said Schneider, or to go where he was in said factory; and there said plaintiff, notwithstanding such

orders, did go into that part of the factory where said Schneider was employed as foreman, and did assault, beat or interfere with said foreman, it would be your duty to find that the plaintiff had committed a breach of his contract by so doing, and the defendant would have a right to discharge him therefor; and in saying willful I do not mean maliciously, but that he did what he did intentionally and with the purpose of doing the act or thing he did do."

The court refused to give this instruction, but gave it as modified. The modification as made by the court consisted in inserting in the body of the instruction, between the words "did" and "assault," the words, *"willfully and not in proper defense of his person,"* and also by adding, at its close, the words, *"and not in self-defense."* As applied to the answer and the established facts in the case, the instruction as tendered by the appellant correctly stated the law. The substance of the instruction was to the effect that if the appellee disobeyed the orders of his master, and assaulted his foreman, it was such an act of insubordination as would authorize appellant to discharge him. The question that should have been submitted to the jury, was not whether the appellee "willfully and not in proper defense of his person," assaulted the foreman of appellant, but whether he disobeyed an express command or order of appellant, and did assault appellant's foreman. The modification of the instruction goes to the extent of saying to the jury, that notwithstanding the appellee disobeyed the orders of appellant, and assaulted his foreman, such conduct would be justifiable if he did not act willfully. The relation of master and servant implies obedience to the master's orders relating to his business, and that the servant, during the term, will yield his will and convenience to that of his master within the bounds of all

lawful and reasonable limits. The master has the right to the management of his own business, to conduct it in his own way, and the servant is bound to yield a ready acquiescence. This is required, not only by the contract, but is also suggested by sound public policy. Mr. Wood, in his work on Master and Servant, says: "It is no excuse for disobeying the master's orders that such disobedience resulted in no loss to him, nor even that disobedience thereto would have involved him in loss, or that such disobedience really resulted to the master's benefit. It is not a question of profit or loss, or of results at all, but of insubordination, which is inconsistent with the relation, and involves a breach of the implied contract." Wood on Master and Servant, p. 229. In the cases of this character, as presented by the pleadings and proof, the question of willfulness does not enter into the controversy.

At the request of appellee, the court gave the following instruction:

"17. In estimating the damages the plaintiff should recover in this action, if you find he was wrongfully discharged by the defendant, you may consider the employment he now has, if you find he is employed, the amount he is now receiving, the probability of his being able to retain his present position, until the expiration of the time under which the defendant had contracted to employ him, or that he occupied his time at his own or other remunerative business, and after taking the amount you find from the evidence that plaintiff might reasonably earn during the unexpired portion of his contract with the defendant, you should allow him then as damages the difference between that amount and the amount stipulated by his contract to be paid him by the defendant. The damages so assessed by you not to extend beyond this trial."

If we rightfully understand the great weight of authorities, this instruction does not correctly state the law, as to the measure of damages, for the wrongful discharge of a servant, before the expiration of his term of service. A servant who has been wrongfully discharged has the option of pursuing either of two courses: (1) He may sue at once, or (2) wait till the expiration of his term of employment. If he choose the former, the damages recoverable are the amount of his wages, at the contract price, to the date of the trial, where that takes place before the expiration of the term, as in this case, less any sum it is shown he has earned, or might reasonably have earned, since his discharge. *Hamilton* v. *Love* (Ind. Sup.), 43 N. E. 873; *Gordon* v. *Brewster*, 7 Wis. *355; *Booge* v. *Pacific Railroad*, 33 Mo. 212; *Nations* v. *Cudd*, 22 Tex. 550; 19 Cent. Law J. 342; *Soursin* v. *Salorgne*, 14 Mo. App. 486; *Holloway* v. *Talbot*, 70 Ala. 389; *Everson* v. *Powers*, 89 N. Y. 527; Sutherland on Damages, sections 692-694.

The instruction is subject to objection, because it is wanting in at least one essential element of the measure of damages, and for the additional reason that it invades the field of speculation and uncertainty. The court said to the jury: *"You may consider the employment he now has"* * * * * and *"the amount he is now receiving."* It was not essential as to what his employment was at the time, or how much he was receiving for his services; but how much he had earned, or might reasonably have earned, up to the time of the trial.

The instruction omits the important element as to what he had, or what he might reasonably have earned. The court also told the jury they might consider *"the probability to retain his present position until the expiration of the time under which the defendant had contracted to employ him."* This was not a legitimate

element of damages for the consideration of the jury. It was too remote and speculative and contradictory, to the well established and firmly grounded rule defining the measure of damages in such cases.

In the case of *Hamilton* v. *Love, supra,* Hackney, C. J., says: "While the contract rate has been adopted as the just measure of compensation, where a discharged servant may recover for the entire unexpired term of the contract, and while he may sue before the contract term has expired, there are just and necessary limitations upon these rules. One limitation is that, if he sues before the expiration of the contract term, he is limited in his recovery to the time when the trial takes place. If this were not true, he would be permitted to recover damages in advance of their accrual, and, having recovered such damages, secure other employment, and thereby obtain double compensation for the period which follows the trial."

And in the case of *Gordon* v. *Brewster, supra,* it was said: "In ascertaining the amount of damages on his contract running four years, we do not think the court and jury were authorized in assuming that the same state of things existing at the time of the trial would continue until the expiration of the contract. Had the respondent seen fit to wait before bringing his action until the period had elapsed for the complete performance of the agreement, the measure of compensation could then have been easily arrived at. * * * But, as the case now stands, we think he is only entitled to recover his salary on the contract down to the day of trial, deducting therefrom any wages which he might have received, or might have reasonably earned in the meantime. This rule appears to us to be the most equitable and safe of any that occurs to our minds, and the one most likely to effect substantial justice between the parties."

The appellee having elected to bring his action before the expiration of his term of service, he is limited in his recovery to the time of the trial, and as the measure of his damages was the contract price, less what he had earned, or what he might reasonably have earned, it was error for the court to instruct the jury that they might consider, in dertermining the amount of the recovery, the probability of his being able to retain the position he then held until the expiration of the term for which appellant had employed him.

There are other alleged errors in the record which the learned counsel have discussed, both in their oral arguments and their briefs, but as the same questions will not likely arise in a subsequent trial of the case, we do not deem it necessary to notice them here, as the judgment must be reversed for the reasons already given.

Judgment reversed, with instructions to the court below to grant appellant a new trial, and for further proceedings in accordance with this opinion.