Indiana Union Traction Co. *v.* Hiatt, Admr.—65 Ind. App. 233.

---

INDIANA UNION TRACTION COMPANY *v.* HIATT, ADMINISTRATOR.

[No. 8,990. Filed December 20, 1916. Rehearing denied February 16, 1917. Transfer denied June 29, 1917.]

1. CARRIERS.—*Injuries to Persons at Station.—Duty of Company.*—Where an interurban railroad, by its manner of operating its road, extended an invitation to all persons to station themselves near the tracks at a highway crossing, within a reasonable time before the arrival of a local car, if they desired to embark thereon as passengers, and to signal such car to stop by burning a match or scrap of paper, the road was under a duty to exercise reasonable care, in the operation of cars at such point, for the safety of one at the crossing who had given the customary signal to stop the car and was waiting to embark thereon. p. 239.

2. NEGLIGENCE.—*Duty to Use Due Care.*—Where a duty to exercise reasonable care is shown to exist, a failure to exercise such care is negligence. p. 241.

3. RAILROADS. — *Injuries to Persons at Station. — Complaint.—Negligence.* — In an action against a railroad for wrongful death, where the averments of the complaint disclosed the existence of a relation between the road and decedent imposing a duty on defendant to exercise reasonable care, a general charge of negligence is sufficient as against demurrer. p. 241.

4. RAILROADS.—*Injuries to Persons at Station.—Action.—Complaint.—Sufficiency.—Contributory Negligence.* — In an action against a railroad for wrongful death, where the complaint contained general averments that decedent was in the exercise of due care and was free from negligence, and the facts specifically averred do not affirmatively show as a matter of law that decedent was guilty of contributory negligence, the complaint is sufficient as against the objection that it affirmatively shows that decedent was guilty of negligence contributing to her death. p. 241.

5. RAILROADS.—*Injuries to Persons at Station.—Answers to Interrogatories.—Contributory Negligence.*—In an action against an interurban railroad company for wrongful death, the action being predicated on defendant's failure to stop its car

234    APPELLATE COURT OF INDIANA,

Indiana Union Traction Co. *v.* Hiatt, Admr.—65 Ind. App. 233.

on signal at a certain highway crossing in accordance with an established custom, findings by the jury in answers to interrogatories that defendant had been in the custom of stopping its local cars, when signaled, at a certain highway crossing to take on passengers, that plaintiff's wife was killed on the tracks by a limited car running on the schedule of a local car, the limited, when signaled by decedent's husband, having given two short blasts of the whistle, the usual response, and that decedent tried to cross the track ahead of the approaching car, did not affirmatively show decedent guilty of contributory negligence in attempting to cross the tracks in front of the car, the headlight of which blinded her so that she was unable to comprehend the situation, for the purpose of getting to the right side of the track to board the supposed local car, and such findings are not inconsistent with the general verdict for plaintiff. p. 242.

6. RAILROADS.—*Injuries to Persons at Station.—Action.—Contributory Negligence.—Question for Jury.*—In an action against an interurban railroad for death at a highway crossing, where the evidence showed that it was the road's custom to stop its local car for passengers at a highway crossing when signaled to do so, that decedent's husband signaled an approaching limited car running on the schedule of the local car, that the motorman gave two short blasts of the whistle, the usual response to a signal to stop, and that decedent, blinded by the car's powerful headlight and hindered thereby from comprehending the situation, was killed while attempting to cross the tracks ahead of the supposed local car in order to get to the proper place to board the same, the question of decedent's contributory negligence was for the jury. p. 244.

7. RAILROADS.—*Injuries to Persons at Station.—Action.—Evidence.—Admissibility.—Prejudicial Error.*—In an action against an interurban railroad for wrongful death, where it was charged that decedent was killed on a crossing by failure of defendant to stop its car upon the giving of the customary signal in answer to which the motorman had made the usual response, two short blasts of the whistle, the admission of testimony by a locomotive engineer that, upon such a signal as was given, proper railroading requires that the whistle be sounded two short blasts and that the locomotive be brought to a stop, was prejudicial error, since it was given by a witness not qualified as an expert in the operation of electric interurban cars and the evidence had a tendency to confuse the jury, because foreign to the theory of the complaint, which did not predicate negligence on the mere fact that the car failed to stop on being signaled, but upon the fact that defendant's

motorman, having given the customary response to the signal to stop, thereby led decedent to believe that the car would slow down and stop at the crossing. pp. 246, 247, 248.

8. APPEAL.—*Harmless Error.—Admission of Evidence.*—If evidence is clearly immaterial, its erroneous admission is generally held to be harmless. p. 246.

9. APPEAL.—*Review.—Evidence. — Erroneous Admission. — Presumptions.*—If testimony is directed to some issue, or to some material question involved in the controversy, and its nature is such that it may have exercised some influence in determining such issue or question, its erroneous admission will be presumed to have been prejudicial, unless it otherwise affirmatively appears from the record. p. 247.

10. EVIDENCE.—*Opinion Evidence.—Operation of Electric Car.— Competency of Witness.*—Experience in operating a locomotive engine does not necessarily or even presumptively qualify a person to operate an interurban electric car, or to speak as an expert with reference to what good railroading requires in operating such cars. p. 248.

11. RAILROADS.—*Injuries to Persons at Station.—Action.—Signals from Car. — Evidence. — Admissibility. —* In an action against an interurban railroad for wrongful death, plaintiff's action being predicated on defendant's failure to stop its car on signal on a highway crossing, where plaintiff introduced evidence that it was the custom of motormen on local cars to give two short blasts of the whistle when they intended to stop in response to signal, it was permissible for defendant to introduce evidence that proper operation required all cars to give such a response to signal, but that only local cars stopped, the response merely indicating that the signal had been observed, as such testimony was pertinent to the question whether deceased was justified in believing that an approaching car, which struck decedent as she was attempting to cross the track, was going to stop. p. 250.

12. APPEAL.—*Briefs.—Sufficiency.—Specification of Errors.*—Although points in appellant's brief are somewhat general, it is the duty of the court on appeal to give them consideration where there is no difficulty in ascertaining the ruling to which they are directed. p. 255.

From Wells Circuit Court; *Robert M. Van Atta,* Special Judge.

Action by Daniel W. Hiatt, administrator, against the Indiana Union Traction Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

James A. Van Osdol, William A. Kittenger, William L. Diven, Albert Diven and Simmons & Dailey, for appellant.

Alfred Henry and Edwin C. Vaughn, for appellee.

CALDWELL, J.—Appellee, as administrator of the estate of his deceased daughter-in-law, Anna Hiatt, brought this action to recover damages for personal injuries to his decedent resulting in her death, caused by one of appellant's cars striking her, as she was attempting to cross appellant's tracks at a private crossing, known as "Hiatt's Crossing," in Grant county. A trial before a special judge and jury resulted in a verdict for $4,000, on which judgment was rendered.

The following points urged in the trial court in support of the demurrer to the complaint are properly presented for our consideration: That the complaint does not disclose by proper averments: (1) That appellant owed decedent any duty to exercise care for her safety; (2) or that appellant was guilty of negligence; (3) or that negligence, if shown, was the proximate cause of decedent's injury and death; (4) that it affirmatively appears from the complaint that decedent was guilty of negligence which contributed to her injury and death.

The complaint is substantially as follows: Appellant operated an interurban electric railroad from Marion southward through Jonesboro and Summitville to points beyond. The railroad passed through a farm situated between Marion and Jonesboro, upon which decedent lived with her husband and children. The farm residence was about 150 feet east of the railroad. A private road extended across the farm passing westward near the north side of the residence and thence intersecting the railroad at grade. The intersection was designated by appellant and others as "Hiatt's Crossing." Hiatt's Crossing was, and for a number

of years had been, a stop on appellant's railroad where passengers were received on and discharged from certain local cars, among them a car running between Marion and Summitville, and known as the Summitville car. Such local cars, however, stopped at Hiatt's Crossing to receive passengers only on signal. The signal in common use after dark was a burning match or burning paper held or waved from a point on or near the track. It had been the custom of decedent and the members of her family for a number of years to do their trading at Jonesboro, and to that end to embark on the Summitville car from said crossing. In one of its daily trips southward this car was scheduled to arrive at the crossing about 6:50 p. m. It had long been the custom of decedent and members of her family and others, when desiring to take passage on said car at Hiatt's Crossing, when it arrived after dark, to signal it as above indicated, whereupon the motorman in charge, on seeing such signal, invariably made answer by two short blasts of the whistle, thereby indicating that the signal had been observed and that the car would be brought to a stop, and he thereupon invariably did bring his car to a stop at the crossing, and received as passengers the persons so signaling. On the evening of September 17, 1910, decedent and her husband went from their residence to the crossing, the husband being some distance in advance, for the purpose of taking passage on the Summitville car, to go to Jonesboro to do their trading. The husband arrived at the crossing at about 6:50, that being the time at which such car usually arrived, and seeing the light of an approaching car several hundred feet north and, supposing it to be the Summitville car, he signaled it by using a lighted match, whereupon the motorman in charge of such approaching car, "in response to said signal so given by decedent's said husband, carelessly and negli-

gently then and thereupon immediately answered that said car would stop at said crossing, by giving the usual two short whistles." Decedent at such time was near the track, but on the east side thereof, and, seeing the signal and hearing the response thereto, she believed from her past experience that the car would stop. Appellant received passengers on south-bound cars at such crossing only from the west side of the track. Decedent, knowing such fact, and being on the east side of the track when she heard the answering signal, immediately started to cross the track, when she reached the west rail, "and while in the exercise of due care upon her part, she was carelessly and negligently struck with great force and violence by said car" and instantly killed. The car that struck her was a limited car, which should have, and usually did, arrive at the crossing some minutes before the Summitville car, but at this time the former was running on the time of the latter. The latter usually passed the crossing at a speed of twenty to thirty miles per hour, but the former was running "at the dangerous and reckless rate of fifty to sixty miles per hour." After answering the signal the limited car did not stop or slacken speed, but by defendant's motorman in charge it was "wrongfully and carelessly and negligently caused to continue its high speed of some fifty to sixty miles per hour, over and across said crossing." The glare of a powerful headlight with which the car was equipped made it impossible for decedent to distinguish a limited from a local car, or to determine the speed or distance of the car, and her only means of knowing whether the car was slackening speed, and whether it would stop was the fact of said answering signal, as appellant knew when said motorman gave such a signal. Decedent believed that said car was the local car, and that it would stop, because two sounds of the whistle were

MAY TERM, 1917.          239

Indiana Union Traction Co. *v.* Hiatt, Admr.—65 Ind. App. 233.

carelessly and negligently given as aforesaid, and, so believing, decedent, in the exercise of due care and without any negligence on her part, and believing that she would have ample time to cross the track before the car arrived, attempted to do so, and was killed as aforesaid. Had appellant slackened the speed of the car and brought it to a stop, as its signal indicated, and as it thereby promised, she could have crossed the track in safety. It is alleged that the proximate cause of decedent's injury and death was: "That said defendant carelessly and negligently gave its signal of two short whistles to stop its said limited car, when in fact and in truth it then and there did not intend to stop said car, and carelessly and negligently failed and neglected to in any manner check the speed of said car, after having given said signal to stop, or in any manner to obey its said signal, and carelessly and negligently continued its high and dangerous rate of speed over and across said crossing, and against plaintiff's decedent, at the rate of speed of from 50 to 60 miles per hour.

"That had said defendant slackened the speed of said car, as its signal indicated, and had it brought its car to a stop at said crossing, as it promised decedent by its said signal that it would do, decedent would have had ample time in which to cross the track in safety, and could and would have safely reached the said place of embarkation, as fixed by defendant aforesaid, and her death would not have occurred."

Proceeding to apply the law to the facts averred respecting the first objection urged against the sufficiency of the complaint, it appears that appellant, by

1. its manner of operating its road, extended to all persons at least impliedly an invitation to station themselves at Hiatt's Crossing near the track, within a reasonable time before the arrival of a local car, in case they desired to embark as passengers on

such car from such stop. Appellant likewise extended to such persons an invitation, or gave them a direction, to make known to the operators of such an approaching car their presence and purpose by a signal established and understood by virtue of custom. In acceptance of such invitation decedent, as one of such persons, at the time involved here, had so stationed herself for the purpose aforesaid, and, observant of such direction, had caused the signal to be given. She was therefore in a proper place at a proper time, and at a place where at the time she had a lawful right to be, and in the usual manner had indicated her presence. She was there in acceptance of appellant's implied invitation. Appellant was bound to anticipate the presence of all persons who might be at such crossing at proper times, in acceptance of such invitation, and hence was chargeable with knowledge of decedent's presence, especially after her presence had been indicated in the usual manner. Under such circumstances, it matters not whether the relation between decedent and appellant be deemed to be that of passenger and carrier, or only that of a prospective passenger and carrier, out of such relation there arose, as a matter of law, a duty as against appellant in the operation of its car to exercise reasonable care for decedent's safety. The complaint is therefore sufficient as against the first objection. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 644, 104 N. E. 866, 106 N. E. 739; *Pere Marquette R. Co.* v. *Strange* (1908), 171 Ind. 160, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041; *Indiana Central R. Co.* v. *Hudelson* (1859), 13 Ind. 325, 74 Am. Dec. 254; *Cleveland, etc., R. Co.* v. *Jones* (1912), 51 Ind. App. 245, 99 N. E. 503; *Warner* v. *Baltimore, etc., R. Co.* (1897), 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491; *Metcalf* v. *Yazoo, etc., R. Co.* (1910), 97 Miss. 455, 52 South. 355, 28 L. R. A. (N.

S.) 311; *Karr* v. *Milwaukee Light, etc., Co.* (1907), 132 Wis. 662, 113 N. W. 62, 13 L. R. A. (N. S.) 283, 122 Am. St. 1017.

Where a duty to exercise reasonable care is shown to exist, a failure to exercise such care is negligence. As we have said, the averments of the complaint here disclosed the existence of a relation from which there arose the duty to exercise reasonable care. Under such circumstances, a general charge of negligence is sufficient as against demurrer. It is therefore apparent from the foregoing abstract of the complaint that it is sufficient as against the second objection urged. *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co., supra; Indianapolis, etc., R. Co.* v. *Wall* (1913), 54 Ind. App. 43, 101 N. E. 680. As to the third objection, it is specifically averred that the negligence charged was the proximate cause of decedent's injury and death.

The complaint contained general averments that decedent was in the exercise of due care, and that she was not guilty of any negligence in the transaction wherein she was injured and killed. Certain facts are specifically averred, but they do not, in our judgment, affirmatively show as a matter of law that decedent was guilty of contributory negligence. The complaint is therefore sufficient as against the fourth objection urged. *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 93 N. E. 561, 95 N. E. 536; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017; *Indiana Bridge Co.* v. *Shepp* (1914), 182 Ind. 610, 108 N. E. 107; *Warner* v. *Baltimore, etc., R. Co., supra.*

Appellant's motion for judgment on the facts found in answer to interrogatories was overruled. It is con-

tended that in such ruling the court erred. The basis of the contention is that such facts as interpreted and measured by appellant show affirmatively that decedent was guilty of contributory negligence. In a general way the facts found are in harmony with the allegations of the complaint. Those calling for special attention are to the following effect: The limited car was scheduled to leave Marion at 6:25 p.m. and the Summitville car at 6:30, the former as scheduled arriving at Hiatt's Crossing about fifteen minutes in advance of the latter, which fact was known to decedent. On this occasion, the former left Marion at 6:30, and passed the latter on the outskirts of the city, arriving at the crossing practically on the time of the latter. Decedent and her husband, hearing the approach of the car, went hurriedly from their home to the crossing. The husband, being in advance, arrived first, the car then being more than a half mile up the track, its headlight being in plain view. The car having approached to within 800 feet, he signaled it. The motorman saw the signal, and gave in response two short blasts of the whistle. The car gave no other signal. The motorman saw decedent's husband standing by the side of the track as the car approached. When the car was about 125 feet distant, the motorman first saw decedent. She was then six feet from the track, and moving hurriedly towards it. As soon as the motorman discovered that decedent intended to cross the track, he made a good-faith effort to stop the car. It was running fifty-five miles per hour.

With the facts so specifically found, certain others alleged in the complaint must be grouped in reviewing the ruling of the court now under consideration. Thus it had been the uniform practice at this crossing for certain local cars, including the Summitville car, to stop on signal, and also for the motorman in charge of such

MAY TERM, 1917.                    243

Indiana Union Traction Co. *v.* Hiatt, Admr.—65 Ind. App. 233.

a car, the proper signal being given, to respond thereto by two short blasts of the whistle, thus indicating that the car would stop. Decedent was fully informed respecting such custom. We must assume, also, that on this occasion decedent knew that the signal had been given and responded to, and that she interpreted the situation in the light of such custom. In view of the allegations of the complaint, we must assume that by such answering signal the motorman did indicate that the car would stop. Appellant's manner of operating its road then had created in decedent's mind a concept of which the elements were a certain time, a definite place, a car approaching in the night at a certain speed, a signal and its response, resulting in a slackening car, brought to a stop. It was with reference to such concept that decedent acted. Appellant here reproduced practically all the elements of such concept, except the result. The actual occurrence was in harmony with the image in decedent's mind as to the place, approaching car, signal, and response. It differed in that the speed was materially greater, and that the car neither stopped nor slackened. The elements wherein the occurrence differed from the concept were the potent factors leading to decedent's injury and death. Had the car been running at the usual speed of the local car, or had it stopped or slackened, decedent would have escaped. Appellant knew that these differences existed; decedent did not. True, had decedent realized her peril when the motorman did, and had she thereupon been as vigilant as the motorman, it is likely there would have been no accident. The motorman, however, was more favorably situated than decedent. He was not blinded by a light. He knew his speed, his distance, and the fact that he was not slackening speed, and that he did not intend to stop. He knew, also, from the fact that his car was hailed, that decedent believed it to be the

local car.   It is alleged in the complaint, and common experience teaches one that the allegation is not unreasonable, that the glare of the headlight concealed all of these facts from decedent.   It is not a case here of a person rushing blindly in front of an approaching car with no sort of knowledge of its distance or speed.   Her conduct was prompted by her previous experience.   It is therefore our judgment that the facts found do not affirmatively convict decedent of contributory negligence, and that consequently such facts are not inconsistent with the general verdict.   The court did not err in overruling the motion for judgment.

Appellant, in support of its contention that the evidence is insufficient to sustain the verdict, states points bearing on the sole proposition that it affirmatively appears from the evidence that decedent was guilty of contributory negligence.   We shall therefore confine our discussion to the same limits.

The evidence bearing on the issue of contributory negligence, including inferences legitimately deducible therefrom, is substantially the same as the facts set out in connection with our discussion of the answers to interrogatories.   In some respects there were conflicts in the evidence.   Thus, several witnesses testified that they heard no whistle at all as the car approached the crossing.   A number of others testified to hearing two short blasts.   The motorman in charge of the car testified that he sounded the regular public highway crossing signal, consisting of two long and two short blasts at a public highway crossing north of Hiatt's Crossing, and that he repeated such signal when he saw the hail given by decedent's husband.   The jury therefore were warranted in finding, as was specifically done in answer to an interrogatory, that decedent's husband's signal was responded to by two short blasts.   A rule of the company was introduced to

the effect that two short blasts of the whistle should. be given in response to any signal in the absence of specific provision in the rules to the contrary, and another rule that: "When a signal except a fixed signal is given to stop a train, it must be answered by two short blasts of the whistle." There was also conflicting parol testimony respecting the significance of such a signal when given in response to a hail, there being testimony that it signified only that the hail was observed, and other testimony that it indicated in addition that the car would stop. The evidence that at this crossing certain local cars, in response to the hail, uniformly sounded two short blasts of the whistle, and thereupon brought the car to a stop at the crossing, was not contradicted. For reasons already given, in our judgment the case was properly submitted to the jury on the issue of contributory negligence. *Karr* v. *Milwaukee Light, etc., Co., supra; Pittsburgh, etc., R. Co.* v. *Yundt* (1881), 78 Ind. 373, 41 Am. Rep. 580; *Warner* v. *Baltimore, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Ryan* (1897), 165 Ill. 88, 46 N. E. 208; *Cleveland, etc., R. Co.* v. *Lynn, supra; Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 7 N. E. 801; *Cadwallader* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 518, 27 N. E. 161; 2 Thompson, Negligence §§1539 1613.

Certain instructions given by the court when interpreted in the light of our view of the theory of this case are somewhat short and inaccurate: Thus, by the first and seventh instructions given on the court's own motion, the court undertook to outline the theory and contents of the complaint. These instructions are short in their exposition of the proximate cause of the injury, as measured by the allegations of the complaint.

As we have indicated, appellant introduced evidence respecting the circumstances under which two short blasts of the whistle of an interurban electric car should

be sounded and the significance of such a signal.

7. Appellee thereupon, in rebuttal, introduced a witness, who, having testified to a number of years' experience as a locomotive engineer, and that he had had no experience in operating interurban electric cars, was permitted to testify as an expert over objection that when an engineer is driving a locomotive and train of cars in the night time, and observes in advance along the track a lighted match or burning paper, proper railroading requires that the whistle be sounded two short blasts, and that the locomotive and train be brought immediately to a standstill. The objection in substance challenged the qualifications of the witness to testify as an expert respecting the proper management of an interurban electric car, and challenged also the applicability of the evidence sought to the issues being tried. There was also an element of the objection that the hypothetical question propounded to the witness was not based on any of the facts or evidence in the case on trial. The witness was shown to have had sufficient experience and qualification to entitle him to be heard respecting the subject about which he was interrogated literally interpreted. That subject did not extend beyond the proper management of a locomotive engine under the circumstances indicated by the question. The management of an interurban electric car was not included. It would therefore seem on first view that the element of the objection that dealt with the qualification of the witness as an expert was not well taken. As the proper management of a locomotive engine was not involved in this action, it would also seem *prima facie* that, while the testimony complained of was erroneously admitted, it was immaterial. If evidence is clearly immaterial, its erroneous ad-

8. mission is, as a general rule, held to be harmless. *St. Louis, etc., R. Co.* v. *Mathias* (1875), 50 Ind.

MAY TERM, 1917.         247

Indiana Union Traction Co. *v.* Hiatt, Admr.—65 Ind. App. 233.

65; *Sparks* v. *Heritage* (1873), 45 Ind. 66; *Robinson* v. *Shanks* (1889), 118 Ind. 125, 20 N. E. 713; *Smith* v. *Meiser* (1894), 11 Ind. App. 468, 38 N. E. 1092; *Fralich* v. *Barlow* (1900), 25 Ind. App. 383, 58 N. E. 271; *McDermitt* v. *Hubanks* (1865), 25 Ind. 232; *Gregg* v. *Wooden* (1856), 7 Ind. 499; *Smith* v. *Mosier* (1838), 5 Blackf. 51; Elliott, App. Proc. §641.  But if testimony is directed to some issue, or to some material question involved in the controversy, and its nature is such that it may have exercised some influence in determining such issue or question, its erroneous admission will be presumed to have been prejudicial, unless it otherwise affirmatively appears from the record.  *Johnson* v. *Anderson* (1896), 143 Ind. 493, 42 N. E. 815; *Bellefontaine R. Co.* v. *Hunter* (1870), 33 Ind. 335, 5 Am. Rep. 201; *Pape* v. *Lathrop* (1897), 18 Ind. App. 633, 46 N. E. 154; *Barnett* v. *Leonard* (1879), 66 Ind. 422; Elliott, App. Proc. §632.

Notwithstanding such *prima facie* conclusion, a more thorough consideration of the situation is convincing that the evidence was not only erroneously admitted, but also that a presumption of its prejudicial nature should be indulged, the following reasons being pertinent:  First, the witness was not shown to be qualified to speak on the question involved in this case to which his testimony was evidently directed.  Second, the evidence was offered on a theory not involved here, but it was of a nature calculated to have an unwarranted influence in determining the cause under its real theory.  As to the first reason, a locomotive engine is a very different instrumentality from an electric traction car.  They differ in motive power, manner of control, and in other respects.  That the law recognizes such difference, see *Hughes* v. *Indiana Union Traction Co.* (1914), 57 Ind. App. 202, 105 N. E. 537.  It follows that experience in operating a

locomotive engine does not necessarily, or even presumptively, qualify a person to operate an interurban electric car, or to speak as an expert with reference to what good railroading requires in operating the latter. While the testimony under consideration was literally directed to the question of the proper management of the former under assumed circumstances, it is plain that such testimony was intended to be effective in determining the question of the proper management of the latter, under the circumstances of this case. On this subject, not only was the witness not shown to be qualified to speak, but also the absence of qualification appeared affirmatively, in that it was disclosed that he had had no experience in the management of an interurban electric car.

As to the second reason, the negligence charged did not consist in the mere fact that the car being signaled did not stop at the crossing. There was no schedule requiring a limited car to stop at that place. It had not been appellant's custom to stop such a car there. Under ordinary circumstances, a prospective passenger might neither require nor expect it to stop, although signaled. Appellee does not claim that, had the car ignored the signal and continued its trip over the crossing, there would have been any negligence. The negligence as charged here consists in the fact that appellant caused such car, under the circumstances alleged, to assume an appearance at variance with its real nature, and that appellant thereupon failed to operate the car in harmony with its apparent nature. From its apparent nature, thus assumed, decedent was led to believe that, under the circumstances, the car would slow down and stop at the crossing. The fact that always, before the time involved here, a car approaching at that hour responded to the signal as did this car, and that it thereupon slowed down and stopped, induced such be-

lief in decedent.   Facts are alleged to the effect, and it
is a fair inference from the evidence, that decedent was
unable to ascertain that such belief was unfounded.
As we have indicated, the motorman in charge knew
the real facts respecting the nature of the car, and that
he did not intend to make the stop.   From the fact that
the car was hailed, he should have known that there
was in advance a person desiring to take passage, and
who believed that the limited car was the local car then
due.   He did nothing, however, to remove such im-
pression from the mind of such person.   In fact he in-
tensified such impression by giving such answering sig-
nal. · The negligence charged, then, is not based upon
the absolute duty to give an answering signal, and
thereupon stop the car, and the failure to do so.   It
is based rather on the fact that, such answering signal
having been given, the car was not stopped or slowed
down.   It thus appears that, if the jury found that the
limited car assumed the appearance of the local car by
answering the hail as the local car always did, a fur-
ther question to be determined from proper evidence
was whether the limited car should thereupon have
slowed down and stopped.   The question of whether
there arose an obligation to stop the car under the cir-
cumstances was of controlling importance.   The testi-
mony under consideration was to the effect that a loco-
motive being signaled, as indicated, good railroading
required the answer to the signal, and that the loco-
motive be stopped.   That the locomotive should be
stopped under the circumstances indicated is an im-
portant element of good railroading as defined by the
witness.   The tendency of the testimony was not only
to confuse the jury and draw their minds from the real
questions involved, but also to influence them to believe
that an obligation to stop the car arose from the mere
fact that it had been signaled.   There could have been

no purpose back of the introduction of the evidence other than so to influence the jury. The testimony was foreign to the theory of the complaint, and came from a witness not qualified to speak respecting the operation of an electric traction car. We cannot say that such testimony did not influence the jury. For error in admitting this testimony, the judgment must be reversed.

The death of the appellee having been suggested, the judgment is reversed as of the date of submission, with instructions to sustain the motion for a new trial.

## On Petition for Rehearing.

CALDWELL, J.—In support of the petition for rehearing it is urged in behalf of appellee that this court erred in holding that the trial court improperly 11. admitted the testimony of the witness Kane, a locomotive engineer. Our decision in that respect is based on grounds as follows: That the witness was not shown to be competent to give an opinion as an expert on the subject to which his testimony was directed, namely, the proper management of an interurban electric car, and in fact that it affirmatively appeared that he was not qualified to speak on that subject, and that the evidence was offered and admitted apparently on a theory foreign to the issues being tried, but that its nature was such that its tendency was to influence the jury in determining the issues as presented by the pleadings. It is insisted in behalf of appellee that, even if it be conceded that the trial court erred in admitting such testimony, appellant is not in a position to avail itself of such error, for the reason that it first offered and introduced evidence of a like nature. Appellee appeals to the principle that where a party opens the door for the admission of incompetent evidence, he is in no position to complain that his ad-

versary followed through the door thus opened and introduced like evidence. Appellee cites among other cases the following: *Perkins* v. *Hayward* (1890), 124 Ind. 445, 24 N. E. 1033, and *Lowe* v. *Ryan* (1884), 94 Ind. 450. Not doubting the soundness of the principle thus appealed to, we proceed to determine the extent that it is applicable and controlling here, if at all. The circumstances referred to by appellee as involving the introduction of improper and incompetent evidence by appellant, and as arousing such principle, are substantially as follows: Appellee in presenting his case in chief introduced evidence tending to show that the Summitville car, on being hailed as it approached Hiatt's crossing, always responded to such hail by two short blasts of the whistle, and that the car was then slowed down and brought to a stop at the crossing to receive as passengers the persons so hailing the car. It was averred in the complaint, in substance, that two short blasts of the whistle given in response to a hail signified that the car would stop. Appellee's case is predicated on decedent's right to reply on such manner of operating such car, and that any car so responding to a hail would be brought to a stop, but that the car involved here, although it so responded to the hail, did not slow down or stop. The complaint proceeds on the theory that the Summitville car was the only interurban car that stopped at Hiatt's crossing to receive passengers, and that it stopped only on hail. Appellee in his original brief so interprets the complaint, and he recognizes such as its theory in the brief filed on petition for a rehearing. Appellee's evidence in chief supports the complaint in this respect. There was no averment and appellee introduced no evidence that interurban cars other than the Summitville car did not also respond to a hail at this crossing by sounding two short blasts of the whistle; nor was there averment or evi-

dence introduced by appellee as to what knowledge decedent had as to the manner of operating other interurban cars in this respect at the crossing. Appellee then left it to conjecture as to whether all cars on being hailed when approaching the crossing responded by two short blasts of the whistle, and as to decedent's knowledge on that subject. Appellee's case then was planted on a custom that had been established respecting the operation of the local car and a failure to observe such custom, but appellee failed to establish that such custom was confined to local cars. If such custom was broader than was indicated by appellee's evidence, and if all cars when hailed on approaching the crossing responded to the hail by two short blasts of the whistle, and only cars thereupon slowed down and stopped, it is apparent that such fact would be important in determining the question of appellant's negligence and possibly also appellee's contributory negligence. Appellee's line of reasoning as applied to the entire case and stated syllogistically is as follows: Local cars approaching the crossing on being hailed answered by two short blasts of the whistle and thereupon slowed down and stopped, but limited cars did not stop at the crossing. The car involved here on being hailed responded by the two short blasts. Wherefore decedent believed and had a right to believe that the approaching car was a local car and that it would slow down and stop at the crossing. It will be observed that the minor premise is not fairly embraced by the major premise, and that as a consequence the conclusion does not inevitably follow. In order that the major premise might fairly comprehend the minor premise, the former should be to the effect that only local cars so responded or that limited cars did not so respond. Under such circumstances it seems apparent to us that it would have been entirely proper for appellant to introduce evidence that all cars,

both local and limited, on being hailed responded by two short blasts of the whistle, but that only local cars thereupon slowed down and stopped, since thereby appellant would have rendered more evident the incongruity between the major and the minor premises of the syllogism as constructed. Appellant, under such circumstances, introduced testimony which appellee contends was erroneously heard, and which opened the door to the testimony of the witness Kane, the locomotive engineer. The facts are as follows: Appellant produced several witnesses who testified that they were engaged in operating interurban cars, some of them on the road involved here, and that they had had a number of years' experience in that line of work. They were then permitted to testify in effect that, a hail being observed as in the case at bar, proper operation required that the whistle be sounded two short blasts and, if the car were one that stopped at that place on hail, that it be brought to a stop; otherwise that it proceed; and also that as interurban electric cars, including appellant's cars, are operated, two short blasts of the whistle are merely an answer to any signal that the motorman may observe or hear, that they are not indicative of anything that the motorman intends to do; that they have no significance other than that the motorman has seen or heard the signal given to him. In view of the fact that appellee, in support of the contention that decedent was justified in believing that the approaching car was the Summitville car, introduced evidence that the limited car gave two short blasts of the whistle when the motorman observed a hail, and in view also of the allegations of the complaint to the effect that two short blasts of the whistle signified that the car would stop, it is our judgment that this evidence was properly heard. It, with the rules that were introduced, had a tendency to establish that it was the duty

254    APPELLATE COURT OF INDIANA,

Indiana Union Traction Co. v. Hiatt, Admr.—65 Ind. App. 233.

of the motorman to sound the blasts under the circumstances regardless of the nature of the car, and consequently in explanation of why they were sounded on the occasion involved here, and such evidence also tended to meet the allegations of the complaint respecting the significance of the answering signal.   It was under such circumstances that the court permitted the witness Kane, who had been a locomotive engineer on a steam railroad, but who had had no experience in operating interurban electric cars, and did not pretend to have any knowledge on that subject, to testify in effect that, had the road been a steam road, and had a locomotive rather than an electric car been approaching, good railroading would have required that when the hail was observed the whistle be sounded two short blasts, and that the locomotive be brought to a stop. This evidence could have been offered for no other purpose than to persuade the jury that like duties rested on the motorman of the electric car, regardless of whether the approaching car was a local or a limited car, and such is the effect reasonably to have been anticipated from its introduction.   As we have said, it not only had not been shown that the witness Kane was competent to speak on the subject to which his testimony was intended to be and probably was applied by the jury, but the fact of such incompetency affirmatively appeared. Moreover, the state of the evidence did not call for rebuttal to the effect that any car, limited or local, under the circumstances, should have answered the hail by two short blasts of the whistle and then come to a stop.   Appellee's complaint was not grounded on such theory.   It has never been appellee's contention that it was the duty of the motorman of the limited car to respond to the hail and then stop the car.   The complaint is predicated on the theory that the duty to stop the car grew out of the fact that the hail was answered.

The state of the evidence called for rebuttal to the effect that only local cars that intended to stop when hailed should respond by two short blasts, and that such blasts had such significance. The duty to stop the car was a very important element in appellee's cause of action, and we, therefore, believe that the evidence of the witness Kane was improperly admitted, and that its admission was presumably prejudicial. We adhere to our ruling. It may be said that appellee in his original brief did not contend that the error, if any, in admitting the testimony of the witness Kane was not available to appellant or that the court did not err in admitting such evidence. In the original brief, however, as in the brief in support of the petition for a rehearing, appellee contends that appellant's points on that subject are so general as not to present any question. Such points are somewhat general, but this court has no difficulty in ascertaining the ruling to which they are directed. Under such circumstances, it is the duty of this court to give them consideration.

Petition for rehearing is overruled.

NOTE.—Reported in 114 N. E. 478, 115 N. E. 101. Carriers: duty of, in respect to taking up passengers, 118 Am. St. 470.