PRESSER *v.* SHULL.

[No. 19,384. Filed March 22, 1962. Rehearing denied May 17, 1962. Transfer denied June 25, 1962.]

*Peck, Scott & Shine* and *William L. Peck,* of Anderson, for appellant.

*Bagot, Free & Shearer, Robert L. Shearer, Robert W. Miller,* of Anderson, *Robert C. Riddell, Theodore L. Locke,* and *Locke, Reynolds, Boyd & Weissell,* of counsel, all of Indianapolis, for appellee.

Ax, J.—This is an action brought by appellant against appellee to recover damages for personal injuries sustained as a result of a collision between an automobile

driven by appellee and an automobile driven by appellant's husband, while appellant was a passenger in her husband's vehicle.

From a verdict and judgment thereon in favor of appellee, appellant has brought this appeal, assigning as error the overruling of her motion for new trial.

On October 14, 1957, appellee, a state police officer, while driving his car west on State Highway No. 67, south of Anderson, Indiana, collided with a car being driven by appellant's husband, hereinafter referred to as Presser. It appears from the evidence that immediately prior to the collision, the Presser car in which appellant was a passenger was being driven east along said Highway No. 67. This highway was a three-lane highway. Presser intended to drive his car into a trailer camp on the north side of the highway to visit with his brother. Prior to reaching a point opposite the west driveway entrance to the trailer court, Presser noticed a car, followed by a truck, coming from the east in the north lane of traffic. Presser turned his car north toward the trailer court driveway and stopped his car in the center lane to wait passing of oncoming cars. The time was approximately 6:00 p.m., it was a dark and clear night, and the lights were burning on his car. Immediately thereafter both appellant and Presser, according to their testimony, saw the police car coming around both of the approaching vehicles, with its red light flashing. From this point on arises a serious conflict in the evidence. Appellant claims that the appellee's car was coming at a rate of speed of approximately seventy-five to ninety miles per hour; that neither she nor Presser saw this car until it was approximately five hundred feet east of their car and was in process of passing the two approach-

ing vehicles from the east by coming over to the south or left side of said vehicles and over and into the center lane. Appellant's evidence further indicates that appellee made no attempt to take his car back into the north lane, but instead proceeded directly towards the Presser car in the center lane; that Presser made an attempt to avoid the collision by turning his car at the last few seconds left toward the north lane but was unable to avoid being hit by appellee's car, which struck the Presser car on the right hand side, causing this car to be wrecked and appellant to be thrown out with resulting injuries.

Taking evidence favorable to appellee as produced by appellant's own witness, Harold Smith, county surveyor, it appears that the crest of the hill to the east was approximately 1000 feet east of the entrance to the west driveway of the trailer camp—that by reason of the way the hill and highway sloped, it was possible for a person with an eye level of four feet six inches above the pavement and with normal eye sight to see an object five feet high approaching the scene of the accident from east to west a distance of 1300 to 1400 feet. There was no evidence that Presser did not have normal eye sight.

According to his own testimony, appellee did not know how fast he was driving but estimated his speed at between 65 and 70 miles per hour. Appellee testified that as he passed the pickup truck and car referred to by appellant's testimony, his siren was sounding, his red flasher was on, and his car mechanically was in good condition; that immediately thereafter he "swung" his car back into the north lane of the highway; that he saw the Presser car move from the center lane into the north or west-bound lane immediately in front of him and he had no time

to apply his brakes but attempted to avoid the collision by swerving his car to the left. Unable to avoid the collision, appellee's car caromed off of the Presser car and went down the center lane of traffic.

There was much conflicting evidence given from eye witnesses, from the appellant, her husband, and the appellee, concerning the point of impact and concerning the actual events leading up to the collision and concerning the actual cause of the collision. Appellee, in order to substantiate his own defense that the actions of the driver of the Presser car caused the collision, called upon two state police officers who were fellow members of the same Police Post out of which appellee worked. One of these men, Officer Jarrett, qualified himself as an expert witness in investigation of auto accidents. He testified that he and Officer Roberts had been called to the scene of the accident shortly after its occurrence and took measurements and pictures of skid marks, gouge marks, oil marks, gasoline marks and marks upon the berm of the highway from the Presser car. Without objection this witness testified that the point of impact of the two vehicles was in the north lane of the west-bound lane of traffic seventy feet west of the center of the west drive of the trailer park. This officer also without objection, testified concerning the point of impact on the Presser car and also on the appellee's car. However, when on direct examination, Officer Jarrett was asked if he could tell, from his observation made at the scene of the accident of the marks on the pavement and the cars themselves, how the cars were positioned when the impact occurred, appellant objected on the grounds that it was calling for a conclusion of the witness. The court overruled

this objection and this testimony was included in the record.

As one of the specifications of error in her motion for new trial, appellant has urged error of law by the court in permitting, over her objection, Officer Jarrett to testify on the above matter. Here follows specification number 4 contained in appellant's motion for a new trial:

"4. Errors of law occurring at the trial of this cause and objected to by plaintiff as follows:

"A. The Court erred in overruling the objection of the plaintiff by her attorney William L. Peck to the defendant's following question propounded by the defendant by his attorney Robert Shearer, during the direct examination of Gene Jarrett, a witness called on behalf of the defendant, and in admitting the answer thereto in evidence, which question, objections, answer and the ruling of the court thereon are in the following words, to-wit:

QUESTION BY MR. SHEARER,
DEFENDANT'S ATTORNEY:

Q. From your observation, made at the scene of the accident of the marks on the pavement and the cars themselves, can you tell us how the cars were positioned when the impact occurred?

MR. PECK, PLAINTIFF'S ATTORNEY:

To which we object. It is calling for a conclusion of the witness. The jury can do that.

JUDGE STEWART:

If this man can tell by the markings, the impact, the cars themselves, in what position they were

relative to each other at the time of the impact, he may do so. He could say whether he can or whether he can't.

MR. PECK:

That's relative to each other but not relative to the highway, is that right Judge?

JUDGE STEWART:

Well, relative to each other. The cars in the beginning— —

MR. PECK:

As I understand it, the cars relative to each other could be in any direction as long as they are— Now he is going to talk about the cars only. Is that right?

JUDGE STEWART:

I don't know whether he can link the cars up or not, but the question here, as I understand it, the relative position of the automobiles at the time of impact. If he can determine it from markings, he may say so.

MR. PECK:

I want my objection registered. It calls for a conclusion of the witness who was not there and who knows nothing but what he saw of the cars several minutes after the accident happened when they were a long distance apart.

JUDGE STEWART:

Objection overruled.

A. Yes sir.

Q. You tell us in your own words, from your observation from the markings upon the highway, the cars themselves, that position the cars were in at the point of impact.

A. From the evidence on the highway and the damage to both vehicles, the Presser car was on the north side facing north, the rear to the south. The police car was— —

MR. PECK:

Now to which I object if the Court please. I move that you strike it out. He doesn't say anything about the relative position of the cars at all. He is talking about position on the highway.

JUDGE STEWART:

He said it was in the north position and he hasn't said where the other car was.

MR. PECK:

He is talking about a position on the highway. A man who wasn't there and don't know how the accident happened.

JUDGE STEWART:

If the evidence can be determined. And he has said that it can be, he has a right to testify.

MR. PECK:

Well isn't that a conclusion of the witness your honor?

JUDGE STEWART:

Not if it is ascertainable from the facts that existed there.

MR. PECK:

How could he ascertain the direction of a car from a dent on the side of it?

JUDGE STEWART:

From the markings on the pavement, the impact, he has said that from all of those things he can determine the position of the cars relative to each other. If he can go as far as to direction, I think he has a right to do that. If it can be ascertained. Not a guess but if it can be ascertained from the facts as they existed there that night.

A. The Presser car was in north-south direction. The front of the car facing north. The police car was in the act of turning and was headed in a south — — —

MR. PECK:

Now to which we object and move that you strike out the police car was in the act of turning — — —

JUDGE STEWART:

Well wait, he hasn't finished yet. Let him finish his answer.

A. It was headed in a southwesterly direction at the time of the impact.

MR. PECK:

I move to strike out the answer completely as being not only a guess but a prejudicial statement of a witness who was a fellow state police officer. He says the police officer was in the act of swerving to the southwest and what does that have to do with the cars? If they were both going

in opposite directions it would be some other way.

JUDGE STEWART:

Objection overruled or the motion is overruled.

MR. PECK:

I move you strike out the answer.

JUDGE STEWART:

Well that is just what you did. I overruled the motion."

In view of our conclusions reached herein, we deem it unnecessary to discuss other specifications of error contained in the motion for new trial.

We are of the opinion that the court below committed prejudicial error in permitting appellee's witness, Officer Jarrett, to express, as an expert witness, a conclusion concerning a question of fact that could have been determined by an ordinary non-expert witness, or might have been determined by the jury based upon eye-witness testimony concerning the point of impact. It is apparent from the testimony of various witnesses and the parties to this action that there was a serious conflict in the evidence concerning whether or not the car of appellee was coming toward the Presser car from the center lane or if it was coming in the north lane immediately prior to the collision.

It is evident that jurors might readily be subjected to undue influence when confronted with a State Policeman as a witness permitted by a court to give an opinion and conclusion from his own private investigation and from what he saw at the scene of the

accident sometime after it happened. The very fact that the court permitted Officer Jarrett to express his opinion gave weight to his testimony, tending to cause the jury to substantiate the opinion of the investigator for the opinion of the jury.

In the case of *Beneks* v. *State* (1934), 208 Ind. 317, 196 N. E. 73, Judge Fansler, speaking for the Supreme Court, aptly stated:

"The rule governing expert testimony is clearly stated by the Court of Appeals of New York, in *Dougherty* v. *Milliken* (1900), 57 N. E. 757, 759, as follows: 'To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge, and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury, with all the facts before them, can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance the facts are to be stated by the experts, and the conclusion is to be drawn by the jury; in the other, the expert states the facts, and gives his conclusion in the form of an opinion, which may be accepted or rejected by the jury.'

"The testimony of medical experts furnishes a good example of the class in which not only the facts, but the conclusions to which they lead, may be testified to by the expert, for the reason that in that field knowledge of the primary facts is not sufficient to enable the jury to draw conclusions. It would seem, however, that in the case of the origin of a fire, if the expert is permitted

to testify to the primary facts, the conclusions can be drawn by the jury, and hence the experts should not be permitted to give his opinion upon the ultimate fact. This view is sustained by all of the authorities which have come to our attention. *People* v. *Grutz* (1914), 212 N. Y. 72, 105 N. E. 843, L. R. A. 1915 D, 229; *Deppe* v. *Atlantic Coast Line R. Co.* (1911), 70 S. E. (N. C.) 622; *Snow Lumber Co.* v. *Atlantic Coast Line R. Co.* (1909), 65 S. E. (N. C.) 920.

"The normal function of a witness it to state facts, and not his conclusions or opinions. It has been said that 'the cases in which opinions of witnesses are allowable constitute exceptions to the general rule, and the exceptions are not to be extended or enlarged so as to include new cases, except as a necessity to prevent a failure of justice — as when better evidence cannot be had.' " *Firemen's Ins. Co.* v. *J. H. Mohlman Co.* (1898), 91 Fed. 85, 88, 33 C. C. A. 347.

The general law in Indiana appears to be that:

"Expert testimony will not be received in evidence as to controverted questions of fact, . . . or as to matters which the jury may determine as well as an expert." 13 I. L. E. Evidence §271, p. 150; *Brunker* v. *Cummins* (1892), 133 Ind. 443, 32 N. E. 732; *Days Transfer* v. *Silver* (1952), 122 Ind. App. 318, 104 N. E. 2d 392.

In the case of *Brunker* v. *Cummins, supra,* Judge Elliott, speaking for the Supreme Court, said:

" . . . It is unnecessary to refer to authorities in support of the general proposition that the testimony of witnesses must, as a general rule, be confined to the statement of facts, since there is no diversity of opinion upon the general question. It may be necessary — at all events it is proper — to refer to the exceptions to the general rule. It is safe to assume at the outset, that where the facts can be fully placed before the jury, opinion evidence, even from experts, is incompetent if the facts are of such a nature that jurors are as

well qualified to form an opinion upon them as the witnesses. . . .

"It is argued by appellee's counsel, that if there was error in admitting the testimony, it was a harmless one. This contention can not prevail. The testimony was directed to very material points, and was of importance, so that we can not say that it did not influence the jury. Where evidence is material and bears upon important points in favor of the party who introduces it, the presumption is that it was influential, and that, if incompetent, harm was done in submitting it to the jury. See authorities cited Elliott's Appellate Procedure, section 594, note 2; section 632, note 3; section 670. The opinion of a witness whose conduct and demeanor impress the jury favorably, going to them under the sanction of the court, may carry as much weight as the statement of a fact, and for this reason it is seldom that incompetent opinion evidence can be said to be harmless. It is true that the court, in admitting evidence, gives no opinion as to its weight or value. *Pedigo* v. *Grimes*, 113 Ind. 148-158, and cases cited. But, while this is true, it is also true that where the court admits evidence over objection, it impliedly declares to the jury that it is to be considered by them, and, where the evidence is incompetent, such a declaration does wrong, inasmuch as it lays before the jury evidence they have no right to hear."

In the case of *Days Transfer* v. *Silver, supra,* a policeman, who had not been an eye-witness to the accident, was called upon to fix the scene of the accident by describing the surrounding conditions at the time and place. After so doing, he was next asked, "And what in your opinion was a reasonable rate of speed to be traveling on the approach to the intersection at that time?" Over objections, the trial court permitted him to answer.

This Court, in reversing the lower court, said, at page 320:

" . . . In our opinion this was error, as, in effect, the witness was allowed to fix the standard of ordinary care required of motorists in respect to speed and thus determine a question that was exclusively within the province of the jury. . . . Expert opinion, however, will not be received concerning a fact which the jury can determine as well as an expert . . . The admission of Quade's opinion as to what constituted reasonable speed at the time and place of the accident was necessarily harmful in connection with other evidence . . . ."

In the case at bar, the court permitted two investigators, who were state policemen, to contradict the evidence of an eyewitness who saw the accident and knew where it took place and who testified to the jury. Similar objections were made to the testimony of Officer Roberts, but his testimony was subsequent to that of Officer Jarrett, and it is unnecessary for us to consider or discuss the alleged error in permitting his testimony. Officer Jarrett was not present at the time of the accident. He was asked to give his opinion and conclusion as to the relative position of the cars to each other at the point of impact from his own private investigation of what he had seen at the scene of the accident sometime after it happened. The very fact that the court permitted him to testify gave weight to his evidence, resulting in a trial by an investigator and not by witnesses, for his opinion was substituted for the opinion of the jury on a question of fact that clearly was within the province of the jury and within their capabilities of determination. If such were permitted, trials of accident cases would be not by juries who listen to eye-witnesses but by juries who take the opinion of investigators and speculators.

For the error above indicated, this judgment is reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

Myers, J. and Cooper, J. concur. Ryan, C.J., dissents.

NOTE.—Reported in 181 N. E. 2d 247. Transfer denied, Arterburn, C. J., Achor, J., not participating.