DEAN MCCLURE, ADMINISTRATOR *v*. SANDRA K. AUSTIN.

[No. 372A133. Filed June 15, 1972.]

*Kenneth A. King,* of Kendallville, for appellant.

*William E. Borror, Hunt, Suedhoff, Borrer & Eilbacher,* of Fort Wayne, for appellee.

HOFFMAN, C.J.—The primary issue raised by this appeal is whether there was any evidence presented showing that defendant-appellee Sandra K. Austin was guilty of wanton or wilful misconduct.

The plaintiff, as Administrator of the Estate of Judith Ann McClure Herdrich, filed his amended complaint for the wrongful death of Judith Ann McClure Herdrich. The amended complaint alleged, *inter alia,* that the plaintiff's decedent was a passenger and guest in a car driven by the defendant Sandra K. Austin, and that she was killed in an automobile accident caused by the wanton and wilful misconduct of the defendant in the following particulars:

> "a. That she [defendant-Austin] crossed the center line of U.S. #30 and was driving on the wrong side of the road;
> "b. That the way was clear and she [defendant-Austin] could see the approaching car, but continued to drive on the wrong side of the road;
> "c. That defendant was exceeding the speed limit when the pavement was wet and slippery;
> "d. That defendant had worked all day at Essex Wire Corp., in Ligonier, Indiana, and was tired and sleepy while operating said automobile."

Trial was to a jury and the following facts are summarized from the testimony contained in the record before us:

Plaintiff-appellant, the father of Judith Herdrich, testified that on the evening of June 16, 1967, Sandra K. Austin came to his house to visit his daughter and take her to Fort Wayne shopping. He testified that he said to Sandra Austin, "[T]he weather condition looks very bad * * * and I forbid you to go." He testified that one of the reasons he told her not to take his daughter was that "she [Sandra Austin] appeared

tired because it was a hot, sultry, humid day and she had worked all day * * *." The plaintiff also testified that he left the house at approximately 7:00 P.M. and the two girls were still "home."

At approximately 7:35 P.M. there was a two-car collision on U. S. Highway 30 in Allen County. One of the investigating police officers testified that there had been a rain, but when he got there "it had quit or was in a slight drizzle." He testified that the highway was flat and level, marked down the centerline, and 24 feet wide.

A State police officer who was at the scene of the accident testified that there were 76 feet of skid marks in the eastbound lane, and that the vehicle driven by Sandra K. Austin had crossed the centerline into the eastbound lane 108 feet east of the impact point. He testified that he asked Sandra Austin what happened at the scene, and that she said "she didn't know." He also testified that from the damage done to the vehicles he estimated that both vehicles were "traveling at approximately 40 miles per hour." He was subsequently asked the following questions:

"Q. What I'm trying to suggest is: can you tell this Jury how the accident happened or can't you?

"A. The only thing that I can state is that the '67 Mustang drove or skidded left of center on a wet road for some unknown reason and struck the other car head on, in which two people died as a result.

"Q. But you have no evidence of what caused it to skid left?

"A. No Sir."

At the close of plaintiff's evidence, defendant-Austin moved for judgment on the evidence. Such motion was sustained by the trial court and judgment was entered thereon. The motion to correct errors filed by the plaintiff-appellant was overruled by the trial court and plaintiff has brought this appeal.

The primary issue presented for this court's review is

whether there is any evidence or reasonable inferences therefrom showing wanton or wilful misconduct on the part of defendant-appellee Sandra K. Austin.

The judgment on the evidence entered by the trial court may only be affirmed if there is a total absence of evidence or reasonable inferences therefrom in favor of the plaintiff upon the issues. If there is any probative evidence or reasonable inferences drawn from the evidence, or if the evidence is such that the minds of reasonable men might differ, then the judgment on the evidence is improper. *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 230 N. E. 2d 315; *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734.

Liability is sought to be imposed upon the defendant in the instant case under IC 1971, 9-3-3-1, Ind. Ann. Stat. § 47-1021 (Burns 1965), which reads as follows:

> "Guest of owner or operator—Right to damages.—The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

In *Tuttle* v. *Reid, et al.* (1966), 247 Ind. 375, at 379-380, 216 N. E. 2d 34, at 36, is found the following language:

> "In regard to 'wanton and wilful' misconduct on the part of the operator of a motor vehicle, this court has said as follows:
> " 'Accordingly, the foregoing decisions are consistent with the proposition that the misconduct of a host driver, in order to bring it within the purview of the guest statute [§ 47-1021], *supra*, must be committed while the driver is possessed of a mental attitude with respect to both his driving and his guest, which is adverse to the welfare of his guest. This mental attitude is necessary if the conduct of the operator is to be described as being either "wanton or wilful" misconduct.

" 'As stated * * * in the concurring opinion of *Brown* v. *Saucerman, supra* [237 Ind. 598, at 619]: [at 907 of 145 N. E. 2d]:

" ' "To be guilty of *wanton* misconduct within the meaning of the statute (§ 47-1021, *supra*), the driver must (1) be conscious of his misconduct; (2) be motivated by a desire to assert himself or his interests above or beyond, or in reckless indifference for, the safety of his guest, and (3) he must do so knowing that his conduct subjects them to a * * * probability of injury." [Our italics.]' *Clouse, etc.* v. *Peden* (1962), 243 Ind. 390, 396, 397, 186 N. E. 2d 1, 3, 4.

"And as said in *Reynolds, Admtrx., etc.* v. *Langford, supra,* at pages 438, 439 of 241 Ind., at page 870 of 172 N. E. 2d, as follows:

" 'The rule as to what is necessary to show "wilful or wanton" misconduct is succinctly stated in *Bedwell* v. *De-Bolt, supra* (1943), 221 Ind. 600, at page 607, 50 N. E. 2d 875 [at 878], as follows:

" ' "To hold one guilty of 'wilful' or 'wanton' conduct, must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries." * * *' " See also: *Brueckner* v. *Jones* (1970), 146 Ind. App. 314, 255 N. E. 2d 535, 20 Ind. Dec. 315 (transfer denied); *Schwing* v. *McKibbin* (1970), 148 Ind. App. 222, 264 N. E. 2d 629, 24 Ind. Dec. 35 (transfer denied); *Mazza* v. *Kelly* (1970), 147 Ind. App. 33, 258 N. E. 2d 171, 21 Ind. Dec. 313.

In *Brueckner* v. *Jones, supra,* at 146 of 314 Ind. App., at 543 of 255 N. E. 2d, it is stated:

"Since 1937 the Indiana Supreme and Appellate Courts have laid down certain guidelines for the lower courts to follow in evaluating guest cases. An examination of these authorities indicates:

    a. An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or wilful misconduct.

    b. The host must have manifested an attitude adverse to the guest, or of 'perverseness,' in that the host must have shown he was indifferent to the consequences of his conduct.

    c.  The entire course of conduct of the host leading up to the accident must be considered.

    d.  The host must have had actual knowledge of danger confronting the guest."

Appellant relies heavily on the case of *Cheek* v. *Hamlin* (1972), 150 Ind. App. 681, 277 N. E. 2d 620, 20 Ind. Dec. 16, (transfer denied). A careful reading of *Cheek* indicates that many of the facts upon which that decision turns have not been presented in the case at bar. In *Cheek* at 150 of 692 Ind. App., at 625 of 277 N. E. 2d, it is stated:

"We are of the opinion that, as the saying goes, 'Every tub must set on its own bottom.' In other words, each case involving willful or wanton misconduct must be decided and must turn on the circumstances as shown by the evidence to be particularly peculiar or unique to the case. Every act entering into the particular transaction must be considered and weighed in connection with all the other circumstances."

Appellant contends that Sandra K. Austin possessed the requisite "perverseness" because she ignored his command not to go because "[t]he weather condition looks very bad * * *" and because she was tired after working on a hot, sultry, humid day from 6:00 A.M. to 2:20 P.M.

In *Sausaman* v. *Leninger* (1957), 237 Ind. 508, at 514, 146 N. E. 2d 414, at 418, it was held:

"We concur in the fact that to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom. However, as heretofore stated, this does not mean that the wrongful conduct of the driver must be motivated by malice, ill will, or intent to injure."

In the instant case, we have examined the entire course of conduct of the parties and find no legitimate inferences

of wanton or wilful misconduct. The evidence is that Sandra K. Austin disobeyed the command of the plaintiff and drove in the rain. It does not follow that she knowingly subjected her guest to a probability of danger. The fact that Sandra K. Austin had worked from 6:00 A.M. to 2:20 P.M. and appeared tired does not permit the inference that the accident was caused by her subsequently falling asleep. Furthermore, even if it were shown that she fell asleep at the wheel, that fact, standing alone, does not show wilful or wanton misconduct. *Brooks* v. *Bloom* (1972), 151 Ind. App. 312, 279 N. E. 2d 591, 29 Ind. Dec. 493.

One of appellant's witnesses, John Herczeg, testified that on November 16, 1971, he drove from the McClure home to the scene of the accident *via* one of the routes Sandra K. Austin might have taken. He testified that the distance was 31 miles and took 38 minutes driving time, staying within the lawful speed limits.

As hereinbefore stated, the two girls were at the McClure house when the plaintiff left at approximately 7:00 P.M. The accident did not occur until "around 7:35 P.M." There is no evidence in the record before us that the road conditions including the type of pavement, speed limits, locations of traffic lights, stop signs, passing lanes, traffic conditions, etc., between the McClure house and the point of the accident were similar on the night of the accident and the day of the experiment. From these facts we can find no inference of excess speed constituting wilful or wanton misconduct.

We have carefully examined the record before us and have found no evidence that the host manifested an attitude of perverseness toward the welfare of her guest, or that the host had any actual knowledge of the danger confronting the guest. The entire course of conduct indicates nothing other than at the time of the accident, the car driven by the defendant, for some unknown reason, skidded to the left of the centerline of the wet road and into the path of an oncoming car. There is nothing in the record from which we

can infer anything more than a mistake or error in judgment thereby resulting in the death of Judith Herdrich.

Appellant contends that the trial court erred in not permitting Herczeg, who was called as an expert accident reconstructionist, to answer a hypothetical question that was propounded to him. Herczeg was asked to accept certain facts as true and then asked to give his opinion of the speed of the car driven by Sandra K. Austin when it crossed the centerline.

The defendant made a timely objection which was sustained by the trial court. Thus, the witness was not permitted to answer the question.

Our research has revealed the following cases where similar evidence was held properly excludable. *Koch* v. *Greenwood* (1971), 149 Ind. App. 457, 273 N. E. 2d 568, 27 Ind. Dec. 115 (transfer denied); *Shelby National Bank* v. *Miller* (1970), 147 Ind. App. 203, 259 N. E. 2d 450, 21 Ind. Dec. 675 (transfer denied); *McCraney* v. *Kuechenberg* (1969), 144 Ind. App. 629, 248 N. E. 2d 171, 17 Ind. Dec. 696; *Carson* v. *Assoc. Truck Lines, Inc.* (1968), 143 Ind. App. 431, 241 N. E. 2d 78 (transfer denied); *McDonald* v. *Miller* (1968), 143 Ind. App. 606, 242 N. E. 2d 39 (transfer denied); *Presser* v. *Shull* (1962), 133 Ind. App. 553, 181 N. E. 2d 247 (transfer denied); *Lee, etc.* v. *Dickerson* (1962), 133 Ind. App. 542, 183 N. E. 2d 615.

These cases, with the exception of *McCraney* v. *Kuechenberg, supra,* are distinguishable from the case at bar. In each of these cases the objection went to the legal competence of the testimony sought to be elicited. In the instant case, a fair reading of the record before us indicates that the objection of the defendant was twofold: (1) that the witness was not qualified to testify as an expert accident reconstructionist; and (2) the facts contained in the hypothetical question are, in certain instances, not supported by the evidence.

In *McCraney* v. *Kuechenberg, supra,* at 633-634 of 144 Ind. App., at 173 of 248 N. E. 2d, it is stated:

"It is appellant's contention that exclusion of this deputy's testimony was erroneous because all the evidence showed him to be a competent expert and because appellee-defendant did not negate by her own evidence or by cross-examination the 'prima facie' showing of competence and qualification. In this regard, suffice it to say that the burden of establishing the qualifications of a witness in order to permit him to testify as an expert is upon the party seeking to have such evidence admitted. It is not the burden of the adversary to prove that said witness is not qualified. 31 Am. Jur. 2d, *Expert & Opinion Evidence*, § 31. Further, whether any such witness is qualified to testify as an expert is for the determination of the trial court whose decision will be set aside only where there is a manifest abuse of discretion. *Chicago & Erie R. Co.* v. *Monesmith* (1941), 110 Ind. App. 281, 37 N. E. 2d 724.

"To accept appellant's contention would require us to hold that a deputy sheriff with eight years law enforcement experience, only three of which were devoted to accident investigation, is, as a matter of law, qualified to testify as an expert upon the speeds of motor vehicles under any and all circumstances. We cannot and will not do so. See *Indiana Union Traction Co.* v. *Hiatt* (1916), 65 Ind. App. 233, at 248, 114 N. E. 478, [115 N. E. 101]."

In the instant case, the witness was sought to be qualified as an expert by his testimony that he was a retired State trooper. He testified that he had investigated some 3,000 accidents during his 30-year tenure as a police officer. He also testified that he had attended certain traffic schools including "Recruit Training School" at Indiana University and "on-the-job training" in determining the speed of vehicles at Purdue University in 1937.

He testified that he had never seen the vehicles involved in the collision, but that he had studied the State police reports and the photographs. He also testified that he had driven along the road in 1965, and had visited the scene of the accident on November 16, 1971, less than two weeks before trial.

From these facts it appears that reasonable men might differ as to whether or not Herczeg was qualified to testify

as an expert accident reconstructionist. Therefore, we cannot say as a matter of law that the trial court abused its discretion in not permitting Herczeg to answer the question. Cf: *Shelby National Bank* v. *Miller, supra.*

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 283 N. E. 2d 783.